# Exhibit F



1

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------x

UNITED STATES of AMERICA,

          -against-                         12 Cr. 320 (ER)

TORRELL M. SAXON,

                    Defendant.

------------------------------------x

                                    United States Courthouse
                                    White Plains, New York

                                    April 9, 2013

B e f o r e:

                    HON. EDGARDO RAMOS,
                            District Court Judge


A P P E A R A N C E S:

MICHAEL GERBER
DOUGLAS BLOOM
          Assistant United States Attorneys



AMY ATTIAS
          Attorney for Torrell M. Saxon








ANGELA A. O'DONNELL, RPR
Official Court Reporter
```

Case 1:14-cv-00733-ER Document 47-6 Filed 09/03/15 Page 3 of 15
Case 1:12-cv-00326-ER Document 36-5 Filed 02/10/14 Page 2 of 15

2

```
 1                    P R O C E E D I N G S
 2         THE CLERK:  United States of America versus
 3  Torrell M. Saxon.  Counsel, please state their appearances
 4  force for record, beginning with the government.
 5         MR. GERBER:  Good afternoon, your Honor.  Michael
 6  Gerber for the United States, with me is AUSA Douglas Bloom.
 7         MR. BLOOM:  Good afternoon.
 8         MS. ATTIAS:  Good afternoon, Judge.  Amy Attias
 9  for Mr. Saxon.
10         THE COURT:  Ms. Attias.  And good afternoon to
11  you, Mr. Saxon.
12         THE DEFENDANT:  Good afternoon.
13         THE COURT:  This matter is on I believe at the
14  request of Ms. Attias.  Mr. Saxon, it's been a little bit
15  since I've seen you; however, I did get and did read your
16  letters of December 21 and January 1 so that you are aware.
17         Ms. Attias, why are we here today?
18         MS. ATTIAS:  Judge, we were here for one purpose,
19  in the last five minutes that sort of changed.  I had gone
20  to Valhalla to see Mr. Saxon last Thursday to go through the
21  first disclosure of the presentencing report and he had been
22  expressing dissatisfaction to me for some amount of time
23  with the plea that he took before you in December but last
24  Thursday for the first time he actually asked to come into
25  court to see if he could withdraw his plea.
```

Case 1:14-cv-00733-ER   Document 47-6   Filed 09/03/15   Page 4 of 15
Case 1:12-cv-00328-ER   Document 56-5   Filed 02/20/14   Page 3 of 15

3

```
 1              So I, of course, communicated that instantly to
 2   Mr. Gerber and Mr. Bloom, and I have not been to Valhalla to
 3   see him.  Just now I had the opportunity the speak with him,
 4   and he actually has changed his position.  He's not looking
 5   to take his plea back, he's not going to be asking you to do
 6   that, and since we were already assembled and I had
 7   expressed it to chambers and expressed it to the
 8   prosecutors, I thought it would be important for us to just
 9   straighten out the record.
10              So his original request last Thursday afternoon
11   was to withdraw the plea and proceed to trial.  He has
12   changed his mind but I think it would be good for you to
13   just question him on that to ascertain I'm not the only one
14   he's saying that to.
15              THE COURT:  Mr. Saxon, a couple of things that you
16   should -- by the way, did either one of you gentlemen want
17   to say anything?
18              MR. GERBER:  No, your Honor.
19              THE COURT:  And you can be seated, Mr. Saxon.
20   Just a couple of things that I wanted to mention.
21              First and foremost, most importantly, I have not
22   yet received the presentence report in this matter.  Have
23   the parties received one at all?
24              MS. ATTIAS:  We got the first disclosure, Judge,
25   which you don't get.
```

Case 1:14-cv-00733-ER Document 47-6 Filed 09/03/15 Page 5 of 15
Case 1:12-cv-00328-ER Document 36-5 Filed 02/20/14 Page 4 of 15

4

1     THE COURT: Right.

2     MS. ATTIAS: And when it appeared that next

3 Wednesday we're on the 17th of April for a *Fatico* hearing,

4 when it appeared that we would not be proceeding directly to

5 sentencing, I did indicate that to the probation officer.

6     THE COURT: Okay.

7     MS. ATTIAS: Told him we would be getting a

8 sentencing date later and that he did not have to get that

9 second disclosure out by the 17th.

10     THE COURT: I did adjourn this *sine die*. I am

11 uncomfortable with that, so I do want to set a date before

12 we leave today.

13     First of all, I haven't seen, Mr. Saxon, your

14 presentence report, I have no idea what sort of sentence the

15 Probation Department is recommending at this point. So you

16 should know that.

17     The second thing that you should know is, although

18 it would appear that you and your attorney were able to

19 negotiate a fairly favorable plea based on the charges that

20 you were originally facing, I was frankly surprised at the

21 offer that was ultimately made. I don't involve myself in,

22 I can't involve myself in plea negotiations between criminal

23 defendants and the government. So there's really very

24 little that I can say in the way of the plea that you

25 received. So you should know those two things.

Case 1:14-cv-00733-ER Document 47-6 Filed 09/03/15 Page 6 of 15
Case 1:12-cv-00328-ER Document 36-5 Filed 02/20/15 Page 5 of 15

5

```
 1              Now, like I said, I did read your letters of late
 2   December and early January, and I did receive some sense of
 3   why we were here this afternoon from communications that
 4   Ms. Attias had with my chambers.
 5              Is there anything that you wanted to tell me since
 6   we're all here?
 7              THE DEFENDANT:  I just, I had wanted to apologize,
 8   you know, to everybody, because I didn't want to waste
 9   nobody's time, but I did want to take my plea back, but
10   after thinking everything over, I don't want to do it.
11              THE COURT:  Okay.  I mean, these are very, very
12   important decisions and certainly I don't consider it a
13   waste of my time to bring you here and have you tell me what
14   is of concern to you.  We're going to be having, you know, a
15   very important meeting in a few weeks and it's important
16   that everyone be completely -- everyone understand what the
17   consequences of all of our actions have been.  So there's no
18   need to apologize.
19              So, the parties have seen the first draft of the
20   report?
21              MS. ATTIAS:  Yes, Judge.
22              MR. GERBER:  Yes, your Honor.
23              THE COURT:  And have objections been made?  I
24   don't need to know what they are, but can someone give me
25   some idea as to where we are in the process?
```

1  MS. ATTIAS: Judge, I actually had some additional
2  facts to send to the probation officer since obviously
3  Mr. Saxon pled to something that was not about what the
4  original facts of the case were about. So I did submit
5  that.
6  THE COURT: Right.
7  MS. ATTIAS: It didn't make it into the first
8  disclosure, it will make it into the second. Outside of
9  that, there were no objections on my part.
10  MR. GERBER: The government had one comment which
11  I shared with the probation officer this morning.
12  THE COURT: That being the case, I think we're
13  scheduled for a *Fatico*.
14  MS. ATTIAS: We are, Judge, next Wednesday the
15  17th.
16  THE COURT: If there are no objections to the
17  presentence report, are we still going to go forward with
18  that?
19  MS. ATTIAS: With the sentencing you mean? Oh --
20  THE COURT: With the *Fatico*.
21  MS. ATTIAS: The *Fatico* is important, Judge,
22  because there was part of the plea agreement that indicates
23  that the parties did not agree on something, and I'll just
24  remind you of what it was. The original charge in the case
25  was felon in possession.

```
 1              THE COURT:  Right.
 2              MS. ATTIAS:  The gun possession.  The plea was to
 3    a (b)(1)(C) pill sale.  Pill sales.  And the agreement
 4    indicates that the government thinks that the guideline
 5    should be enhanced by two points for the gun possession,
 6    even though Mr. Saxon never admitted to gun possession and
 7    we are fighting the additional two points on the gun.  So
 8    the Fatico is really about the two points, should there be
 9    an enhancement or will your Honor find by a preponderance of
10    the evidence that he, in fact, have a gun during the evening
11    in question.
12              THE COURT:  I guess my concern, and it's not a
13    huge concern, is that should we have a Fatico if we don't
14    have a presentence report?  Typically that's the trigger.
15    No pun intended.
16              MS. ATTIAS:  Oh, that was good.  This disagreement
17    is expressed in writing in the plea agreement, the
18    disagreement over the two points, so that I thought it was
19    actually important to have the Fatico, your Honor make a
20    decision on whether you think that the guideline should be
21    enhanced or not, the two-point enhancement applied or not,
22    and then I think that may very well affect the
23    recommendation by probation.
24              MR. GERBER:  Your Honor, if I may?
25              THE COURT:  Sure.
```

Case 1:14-cv-00733-ER Document 47-6 Filed 09/03/15 Page 9 of 15
Case 1:12-cv-00326-ER Document 36-5 Filed 02/13/14 Page 8 of 14

8

```
 1            MR. GERBER:  I want to be clear on the
 2   government's position and what we will be trying to prove
 3   next week.  There really are sort of two pieces of this.
 4            The Government's position is that the defendant
 5   did possess a gun on the night in question.  In fact
 6   discharged that gun.  The plea agreement expressly carves
 7   out that question.  The parties agree about that.  And it
 8   carves out the question whether a two-level increase is
 9   appropriate because of the defendant's gun possession.
10            There really are two reasons, one is the two-level
11   increase under the guidelines, but there's a separate point,
12   which is that even the two-level increase aside, whether or
13   not the defendant possessed the gun, discharged the gun, is
14   relevant under 3553(a) and 3661, so I just want to be clear
15   that it's not just this two-level disagreement, though there
16   is that disagreement.  I mean, the Government's position is
17   that the gun possession at the very least is relevant under
18   3553(a), and the defendant's position is that he didn't
19   possess a gun.  So even the guidelines aside on the 3553(a)
20   question, seems like there's a factual dispute which will
21   require a hearing.
22            THE COURT:  All right.
23            MS. ATTIAS:  I may as well, since we're here, the
24   reason Mr. Saxon had waffled on whether he should ask for
25   his plea back or not was because, you can already hear
```

Case 1:14-cv-00733-ER   Document 47-6   Filed 09/03/15   Page 10 of 15
Case 1:12-cr-00325-ER   Document 56-5   Filed 02/10/15   Page 9 of 14

9

```
 1  what's going on, there was a gun charge, the gun charge went
 2  away, he didn't plead guilty to the gun, but there is still
 3  this gun hearing and the question about whether he had a
 4  gun.  So his position for a while was, if I'm going to do
 5  this Fatico and I could be hit with the gun factually, which
 6  impacts on his sentence in lots of ways, his availability
 7  for programs, et cetera, his designation, minimum, maximum,
 8  whatever security level it's going to be, so that he thought
 9  perhaps it would have been better to do the full-blown
10  trial.  Just so you understand why he had gotten to that
11  point.  Can I have just one moment with Mr. Saxon, please?
12            THE COURT:  Sure.
13            (Defense counsel and defendant confer)
14            MS. ATTIAS:  Thanks, Judge.  I think we're fine.
15            THE COURT:  Remind me, the original Indictment
16  that he was under, did it have a mandatory minimum?
17            MR. GERBER:  Yes, your Honor.  Fifteen years.
18            THE COURT:  So he was looking at mandatory 15.
19            MR. GERBER:  Yes.
20            THE COURT:  And the superseder was --
21            MR. GERBER:  Drug charges for which there is no
22  mandatory minimum.  I should point out your Honor, the
23  defendant is a career offender under the guidelines.
24            THE COURT:  All right.
25            Is there any disagreement as to that?
```

```
 1            MS. ATTIAS:  No, there isn't.
 2            THE COURT:  Okay.
 3            MS. ATTIAS:  Even though there's no mandatory
 4   minimum, of course the guidelines are gigantic.
 5            THE COURT:  Right.  Okay.  So we'll be back next
 6   Tuesday, Wednesday.
 7            MS. ATTIAS:  Wednesday.
 8            THE COURT:  Wednesday.  And why don't we just go
 9   ahead and pick a date for sentencing so that I don't concern
10   myself.
11            THE CLERK:  June 19, which is a Wednesday.
12            MS. ATTIAS:  I think I'm going to be on trial next
13   door in County Court for about three weeks in June.  I start
14   June 7, I'm wondering if we can do it slightly before that.
15            THE COURT:  Can we do it earlier, month and a
16   half?
17            THE CLERK:  June 12.
18            MS. ATTIAS:  I start the seventh.  How about the
19   last week of May or so?
20            THE CLERK:  May 30.
21            MS. ATTIAS:  That's fine.
22            THE CLERK:  10:30.  May 30, 2013 at 10:30.
23            THE COURT:  Ms. Attias, you want to give me a
24   preview of what we're going to be doing next week?
25            MS. ATTIAS:  Judge, I think that the government is
```

Case 1:14-cv-00733-ER   Document 47-6   Filed 09/03/15   Page 12 of 15
Case 1:12-cv-00323-ER   Document 36-9   Filed 02/19/14   Page 12 of 15

11

1  going to be calling an expert witness and one of the
2  civilians who was inside the apartment where the incident
3  took place. I'm not sure, I don't want to speak for them.
4  At least a few witnesses. I have an expert witness who will
5  talk about the burn marks, wound marks on Mr. Saxon's -- you
6  know what, I'm going to go back a step and give you a few
7  facts. I think will be a lot easier.
8             THE COURT: Okay.
9             MS. ATTIAS: There is a serious factual dispute
10 over who had a gun inside a house in Middletown last March.
11 There was clearly a gun inside the apartment because shots
12 were fired. The residents of the apartment or the civilians
13 who were inside the apartment claim, as is in the complaint
14 and the original Indictment, that Mr. Saxon came to the
15 door, that he pulled a gun, fired the gun, they wrestled him
16 down and called 911. The police come and they recover a .22
17 somewhere inside the apartment and they take Mr. Saxon and
18 charge him. The case then is federalized several weeks
19 later.
20            When he's arrested, and we have photos that the
21 Marshals took the day he was arraigned in this building,
22 there were some sort of markings on the right side of his
23 face like a burn or a scabbing kind of marking.
24            Mr. Saxon, and I'm going to say this since he's
25 had an innocence proffer already and put everything forward

1  to the government, claimed that he was outside, he was for
2  some time during the course of that evening and he had been
3  selling or attempting to sell pills that he had on him.  He
4  bumped into a woman he knew who was working in the areas as
5  a prostitute.  She brought him to this same apartment, the
6  door opens and then he tells the government that he was
7  jumped and that he doesn't know where the gun came from that
8  it was not his gun that he was jumped, that he struggled
9  and, in fact, in the 911 call you can hear all this yelling
10 and screaming, it's Mr. Saxon screaming as they're on top of
11 him.  But his claim is that he never had the gun.
12         My ballistics expert testifies actually to a
13 somewhat different subject matter than the Government's
14 ballistic expert.  Their expert finds that the shells in the
15 house do, in fact, come from the .22 that was recovered.  My
16 expert says the markings on his face could not have been
17 made by a .22 and the government is aware of her position
18 that the .22 never gets hot enough, that even if it was
19 right next to his face during the struggle, that it would
20 never have generated enough heat to cause that kind of
21 burning on his face.
22         There's also, I just recently forwarded to the
23 government and to my expert some other photos I took a few
24 weeks ago, investigators took a few weeks ago showing marks
25 on the door inside the apartment where this happened.

1     So, their expert will testify, the ballistics
2 evidence coming -- found in the apartment is internally
3 consistent, that the shells come from the gun, but my expert
4 is going to stay, yeah, but that gun never could have done
5 what it did. It could not have burned him. So that our
6 position is going to be, somebody else had a gun, some other
7 gun did this and they can't prove it.
8     THE COURT: Are those two things the necessarily
9 mutually exclusive?
10     MS. ATTIAS: Which two things?
11     THE COURT: The fact that there was a gun but the
12 gun that was in the apartment could not have done what?
13     MS. ATTIAS: The gun that was recovered, I don't
14 think they're mutually exclusive. I think it suggests
15 various other conclusions and I will be making other
16 arguments.
17     THE COURT: Okay.
18     MS. ATTIAS: So that's what the hearing is kind of
19 about.
20     THE COURT: Okay. Should be fun.
21     Anything further?
22     MR. GERBER: No, your Honor.
23     MS. ATTIAS: No. Thank you, Judge.
24     THE COURT: We'll see you next week.
25     MS. ATTIAS: Okay.

Case 1:14-cv-00733-ER Document 47-6 Filed 09/03/15 Page 15 of 15
Case 1:12-cv-00323-ER Document 36-9 Filed 02/10/15 Page 15 of 15

14

1   MR. GERBER: Thank you, your Honor.

2   (Proceedings concluded at 2:59 p.m.)

3                  C E R T I F I C A T E

4   I, Angela A. O'Donnell, certify that the foregoing is a

5   correct transcript from the record of proceedings in the

6   above-entitled matter.

7   _____

8   Angela A. O'Donnell, RPR, Official Court Reporter

9   United States District Court, Southern District of New York