# Exhibit G

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X

UNITED STATES OF AMERICA    :        **11 Cr. 678 (RJS)**

  - v -             :

**ANTHONY NORTHINGTON,**    :

           Defendant.    :

------------------------------------------------------X

## DEFENDANT ANTHONY NORTHINGTON'S MEMORANDUM OF LAW SUBMITTED IN SUPPORT OF HIS PRETRIAL MOTIONS

FEDERAL DEFENDERS OF NEW YORK, INC.

By: _____

**PEGGY M. CROSS, ESQ.**
Attorney for Defendant
    **Anthony Northington**
52 Duane Street - 10th Floor
New York, New York 10007

TO:  **PREET BHARARA, ESQ.**
     United States Attorney
     Southern District of New York
     One St. Andrew's Plaza
     New York, New York 10007
     Attn:  **RACHEL MAIMIN, ESQ.**
           Assistant United States Attorney

# TABLE OF CONTENTS

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .5

    I. THE INDICTMENT SHOULD BE DISMISSED
    BECAUSE MR. NORTHINGTON IS NOT SUBJECT TO
    THE ENHANCED SENTENCING PROVISIONS OF 18 U.S.C. 924(e) . . . . . . . 5

        *A. Section 924(e)'s Enhanced Sentencing Provisions* . . . . . . . . . . . . . . . . . . . . .5

        *B. Mr. Northington's Relevant Prior Convictions* . . . . . . . . . . . . . . . . . . . . . . . .6

        *C. The Court Should Apply the Current New York
        Sentencing Scheme in Determing Whether Mr. Northington's
        Prior Convictions Constitute "Serious Drug Offenses"* . . . . . . . . . . . . . . . .8

        *D. The Indictment Should be Dismissed Because it Does Not State a
        Violation of 18 U.S.C. 924(e) or, in the Alternative, the Court
        Should Rule that 18 U.S.C. 924(e) Does Not Apply in This Case* . . . . . . . .13

    II. THE COURT SHOULD DISMISS THE INDICTMENT,
    OR PROVIDE ALTERNATE RELIEF, TO REMEDY
    THE VIOLATION OF MR. NORTHINGTON'S SIXTH
    AMENDMENT RIGHT TO COMPULSORY PROCESS . . . . . . . . . . . . . . .14

    III. EVEN ABSENT THE SIXTH AMENDMENT VIOLATION,
    MR. NORTHINGTON IS ENTITLED TO THE TRACE
    REPORT PURSUANT TO RULE 16 AND BRADY v. MARYLAND . . . . . . .16

    IV. THE COURT SHOULD SUPPRESS THE PHYSICAL EVIDENCE
    AND ANY STATEMENTS RECOVERED AS A RESULT
    OF THE ILLEGAL SEARCH AND SEIZURE OF THE CAB . . . . . . . . . . . . 19

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .21

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x

UNITED STATES OF AMERICA          :

            v.                    :

                                            11 Cr. 678 (RJS)

ANTHONY NORTHINGTON,              :

            Defendant.            :

------------------------------------------------------------x


## INTRODUCTION

The defendant, Anthony Northington, respectfully submits this memorandum of

law in support of his motion for (1) dismissal of the indictment, or in the alternative, a ruling

from the Court that he is not subject to the enhanced sentencing provisions of 18 U.S.C. 924(e);

(2) dismissal of the indictment for violation of his Sixth Amendment right to compulsory process

or, in the alternative, an order compelling the production of certain material to remedy the Sixth

Amendment violation and to comport with Federal Rule of Criminal Procedure 16(E)(I) and

Brady v. Maryland; and (3) suppression of evidence and statements recovered as a result of an

illegal search and seizure.

## STATEMENT OF FACTS

Anthony Northington, the defendant in the above-captioned case, is charged by

indictment with one count of possession of a firearm in violation of 18 U.S.C. 922(g).  See Cross

Aff. ¶ 2 & Exh. A.  The indictment further alleges that he is subject to the enhanced sentencing

provisions of 18 U.S.C. 924(e).  He was arrested on July 22, 2011 after he was removed from a

1

livery cab (the "cab") in which he was riding as a passenger. After he was placed under arrest, law enforcement recovered a gun from the floor of the cab.

According to the criminal complaint filed in this case, a police officer driving an unmarked patrol car saw the cab "dr[i]ve at a high speed and change[] lanes without signaling." See Cross Aff. ¶ 3 & Exhibit B. The complaint further alleges that the officer observed a passenger in the back of the cab, who he later identified as Mr. Northington, "turn his head to look at the [patrol car] and then slouch down so he could no longer be seen." Id. The officer stopped the cab and allegedly "saw [Mr.] Northington attempt to kick something that appeared to be a firearm underneath the front passenger seat of the Cab." Id. At this point, law enforcement officers ordered Mr. Northington out of the Cab and placed him under arrest. Id. at ¶2(d). After Mr. Northington was arrested, law enforcement recovered a firearm from the floor of the cab "in the vicinity of the rear of the front passenger seat." Id.

Mr. Northington did not observe the cab commit any traffic infraction. He did not observe the cab drive over the speed limit or change lanes without signaling before it was stopped by law enforcement. See Cross Aff. ¶ 4 & Exh. C. Mr. Northington denies engaging in any suspicious behavior prior to the time the officers stopped or approached the cab. He denies that there was a firearm visible when the officers approached the cab. He denies engaging in any suspicious behavior or kicking anything under the seat. Id. Mr. Northington was ordered out of the cab and was placed in handcuffs and placed under arrest. At the time he was removed from the cab and placed under arrest, no gun was visible. Id. at ¶5.

Following Mr. Northington's arraignment on the indictment, the Court ordered the

government to provide discovery to the defense. The discovery produced in this case did not contain information indicating that the driver of the cab was issued a ticket for any alleged traffic infraction. See Cross Aff. ¶ 5. The discovery in this case did not contain any fingerprint or DNA analysis, nor did it contain any information indicating that fingerprint or DNA samples had been taken from the gun recovered from the cab. The government informed defense counsel orally that no such samples were taken and that no usable samples could now be taken because the gun had been handled by law enforcement in the course of testing the gun's operability. See Cross Aff. ¶ 6.

By letter dated August 25, 2011, the government informed defense counsel that a Firearms Trace Summary (the "Trace report") prepared by the Bureau of Alcohol, Tobacco, Firearms and Explosives (the "ATF") revealed that the gun recovered from the cab on July 22, 2011 had been purchased by someone other than Mr. Northington on May 21, 2011 from a firearms dealer in Hartwell, Georgia. See Cross Aff. ¶ 7 & Exh. D. The Federal Defenders has been unable to obtain information regarding the purchaser of the firearm from dealers in Hartwell, Georgia. The dealers we have contacted have been very hostile and have refused to provide information. For example, one dealer responded to our inquiry by cursing Mayor Bloomberg and hanging up on us. Id.

The defense attempted to obtain the Trace report by subpoena to the ATF. Although it has not moved to quash the subpoena, the ATF has refused to comply with the subpoena "due to Federal law." See Cross Aff. ¶ 8 & Exh. E. Essentially, the ATF asserts that federal law prohibits it from spending any money in order to disclose a Trace report in response

3

to a subpoena, although it is permitted to provide the Trace report to federal, state, and local law enforcement. See id. The defense offered to pay for any costs associated with producing the Trace report, including photocopying and mailing costs, and offered to provide a self-addressed stamped envelope or call the ATF and receive the information contained in the Trace report over the phone. Again, the ATF refused to provide the requested information, asserting that funding restrictions prohibit the ATF from expending any funds, "including salaries, government phones, etc." to provide defense counsel with the requested information, but reiterated that it could provide the requested information to law enforcement agencies. See Cross Aff. ¶ 8 & Exh. F.

   Prior to his arrest in this case, Mr. Northington sustained four felony convictions, all for violations of New York law. In 1999, he was convicted of Criminal Sale of a Controlled Substance in the Third Degree, a B Felony, and was sentenced to three years in custody. In 2000, he was convicted of Criminal Possession of a Controlled Substance in the Third Degree, a B Felony, and was sentenced to two to four years in custody. In 2005, he was convicted, under the name Anthony Thomas, of Criminal Sale of a Controlled Substance in the Fifth Degree, a D Felony, and Criminal Possession of a Controlled Substance in the Third Degree, a B Felony, and was sentenced to four-and-one-half to nine years in custody. See Cross Aff. ¶ 9.

   After the conduct that led to Mr. Northington's convictions, the New York legislature amended the state's drug sentencing laws. The laws under which Mr. Northington had been sentenced – the so-called Rockefeller Drug Laws – were deemed by the legislature to be too harsh and to overstate the seriousness of the conduct they punished. Although his conduct predated changes in state law, Mr. Northington was eligible to be resentenced on his 2005

convictions and, following resentencing, his sentence was reduced to 3 years in custody to be followed by 2 years of post-release supervision. See Cross Aff. ¶ 10 & Exhs. G-I.

Mr. Northington now moves the Court for the dismissal of the indictment against him, the suppression of evidence recovered as a result of the unlawful search and seizure, and other associated relief that the Court deems just and proper.

## ARGUMENT

### I. THE INDICTMENT SHOULD BE DISMISSED BECAUSE MR. NORTHINGTON IS NOT SUBJECT TO THE ENHANCED SENTENCING PROVISIONS OF 18 U.S.C. 924(e)

The indictment charges Mr. Northington with violating 18 U.S.C. §§ 922(g) and 924(e) by knowingly possessing a firearm after having "been previously convicted in a court of a crime punishable by one year," and having "had three previous convictions by a court for serious drug offenses." See Indictment. In fact, Mr. Northington has only two previous convictions for serious drug offenses, so he is not subject to the enhanced sentencing provisions of Section 924(e). If the Court determines that a motion to dismiss does not lie given the current posture of the case, the defense nevertheless requests a ruling from the Court that Mr. Northington is not subject to the enhanced sentencing provisions of Section 924(e) so that he may properly be advised of the maximum possible penalty he faces and whether he is subject to any mandatory minimum penalty.

#### A. *Section 924(e)'s Enhanced Sentencing Provisions*

Section 924(e)(1) provides that a person who violates Section 922(g) and who has three previous convictions for a violent felony or a serious drug offense, committed on different

5

dates, shall be sentenced to a mandatory minimum term of fifteen years' imprisonment. 18 U.S.C. 924(e)(1). A person subject to Section 924(e)'s enhanced sentencing provisions faces a maximum of life in prison. A person convicted of violating Section 922(g) who is not subject to Section 924(e)'s enhanced sentencing provisions faces a maximum of ten years' incarceration and no mandatory minimum jail time. See 18 U.S.C. 924(a)(2).

Section 924(e)(2) defines violent felonies and serious drug offenses for the purposes of the sentencing enhancement. A violent felony is defined as a crime punishable by a year or more in prison that either has an element of the use, attempted use, or threatened use of force or is an offense enumerated in the statute. See 18 U.S.C. 924(e)(2)(B). The term "serious drug offense" is defined as a violation of certain enumerated federal drug offense or "an offense under State law, involving manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance . . . for which a maximum term of imprisonment of ten years or more is prescribed by law." See 18 U.S.C. 924(e)(2)(A).

Mr. Northington has no prior convictions for crimes of violence, nor does he have any prior federal drug convictions. The issue before the Court is whether he has three previous convictions for offenses involving manufacturing, distributing, or possessing drugs for which a maximum term of imprisonment of ten years or more is prescribed by law. The defense submits that he does not.

### B.    *Mr. Northington's Relevant Prior Convictions*

Mr. Northington has four prior felony convictions, all under New York State law. See Cross Aff. ¶ 9. In 1999, he was convicted of Criminal Sale of a Controlled Substance in the

6

Third Degree, a B Felony, and was sentenced to three years in custody. In 2000, he was convicted of Criminal Possession of a Controlled Substance in the Third Degree, a B Felony, and was sentenced to two to four years in custody. In 2005, he was convicted of Criminal Sale of a Controlled Substance in the Fifth Degree, a D Felony, and Criminal Possession of a Controlled Substance in the Third Degree, a B Felony, and was sentenced to four-and-one-half to nine years in custody.

The maximum penalties for these offenses are proscribed by New York Penal Law Section 70.70. The statute authorizes the imposition of a sentence of a term of imprisonment of one to nine years following a conviction of a class B felony drug offense. See N.Y. Penal L. 70.70(2)(a)(I) (McKinney's 2011). An individual convicted of a subsequent class B felony drug offense faces a sentence of imprisonment of two to twelve years. See N.Y. Penal L. 70.70 (3)(b)(I) (McKinney's 2011). An individual who previously has been convicted of a drug felony faces a term of imprisonment of one-and-one-half to four years if convicted of a subsequent class D felony drug offense. See N.Y. Penal L. 70.70 (3)(b)(iii) (McKinney's 2011).

The conduct that led to Mr. Northington's prior felonies all predated New York's overhaul of the so-called Rockefeller Drug Laws which had been promulgated in 1974. Through a series of amendments to the New York Penal Law, Criminal Procedure Law, and Corrections Law, the legislature affected statutory changes "designed to ameliorate the harsh sentences previously mandated for non-violent drug offenders convicted of drug felonies." New York v. Danton, 27 Misc. 3d 638, 643 (Sup. Ct. N.Y. County. 2010). The initial change came with the Drug Law Reform Act of 2004 (the "DLRA"). In 2005, the legislature further amended the law

7

with the DLRA-2, an act that expanded the ameliorative provisions of the DLRA. In 2009, the DLRA-3 created additional remedial provisions that were available to individuals convicted of class B felonies and, as codified in N.Y.C.P.L § 440.46, extended the resentencing provisions of the reformed laws to individuals who conduct predated the effective date of the DLRA. See Danton, 27 Misc. 3d at 642-44. Together, these changes to the law reduced the maximum penalties applicable to drug-related felonies and made that reduction available to defendants previously convicted and sentenced for drug-related felonies. For example, New York Criminal Procedure Law § 440.46(1) expressly provided that individuals serving previously-imposed sentences for class B felonies committed prior to the 2005 effective date of the initial drug law reforms were eligible to apply for resentencing. N.Y.C.P.L § 440.46(1) (McKinney's 2011). Indeed, in 2009, Mr. Northington was resentenced based on his 2005 convictions. His original sentence of 4-1/2 to 9 years was reduced to a determinate sentence of 3 years. See Cross Aff. Exhs. G-I.

Based on current New York law, Mr. Northington has only two prior convictions for which he faced a maximum sentence of ten years or more in prison. His first class B felony carries a maximum penalty of only nine years. In consequence, it does not constitute a "serious drug offense" within the meaning of 18 U.S.C. 924(e)(2)(A).

### C.    *The Court Should Apply the Current New York Sentencing Scheme in Determining Whether Mr. Northington's Prior Convictions Constitute "Serious Drug Offenses"*

In McNeill v. United States, 131 S. Ct. 2218 (2011), the Supreme Court considered whether a federal court should look to current state sentencing law or state sentencing

law as it existed at the time of a defendant's prior conviction in determining the applicability of

18 U.S.C. § 924. On the facts of that case, the Court held that a federal court should determine

the maximum sentence for a prior state drug offense by looking at the sentence that applied to the

offense of conviction at the time of conviction. McNeill, 131 S. Ct. at 2220. The Court made

clear, however, that the "case [did] not concern a situation in which a State subsequently lowers

the maximum penalty applicable to an offense and makes that reduction available to defendants

previously convicted and sentenced for that offense." Id. at 2224 & n.1.

      At the time of his federal case, McNeill had two prior convictions for violent

felonies and six drug trafficking convictions. He argued that he was not subject to the enhanced

sentencing provisions of 18 U.S.C. 924(e) because the state drug offenses for which he had been

convicted no longer carried a maximum prison sentence of ten years or more. At the time he

committed those offenses, however, they did carry a ten-year maximum sentence and, in fact,

McNeill had been sentenced to ten years. See McNeill, 131 S. Ct. at 2221. The changes to the

North Carolina statute did not apply to crimes committed before its enactment, as McNeill's had

been. Id.

      The Supreme Court was unable to accept McNeill's reading of the statute, in part

because it would have resulted in a reading of his prior convictions that said he was sentenced to

ten years despite a maximum allowable sentence of 30 or 38 months (depending on the drug

involved). "We find it hard to accept the proposition that a defendant may lawfully [have] be[en]

sentenced to a term of imprisonment that exceed the maximum term of imprisonment . . .

prescribed by law." See McNeill, 131 S. Ct. at 2222 (quoting United States v. Rodriguez, 553

9

U.S. 377, 383 (2008) (internal quotation marks omitted); see also United States v. Simmons, 649 F.3d 237, 245 & n.6 (4th Cir. 2011) ("crucial to the McNeill holding was the fact that North Carolina courts actually sentenced [McNeill] to ten years in prison") (internal quotation marks omitted)). The Court further stated that McNeill's reading of the statute could lead to absurd results. "A defendant's history of criminal activity – and the culpability and dangerousness that such history demonstrates – does not cease to exist when a state reformulates its criminal statutes." Id. at 2223. Nor, the Court said, could McNeill explain why whether a federal defendant convicted of violating 18 U.S.C. 922(g) was subject to the enhanced sentencing provisions of 18 U.S.C. 924(e) should turn on whether the defendant is sentenced before or after a change in state law.

Because of the differences between Mr. Northington's case and McNeill, the defense submits that the Court should look to current New York law to determine the maximum sentences applicable to Mr. Northington's prior felonies.

To begin with, Mr. Northington's case fits squarely within the exception left open by footnote 1 of McNeill. Subsequent to his state convictions, New York amended state law to provide several ameliorative provisions to individuals convicted of class B felonies, including the lowering of the maximum sentence applicable to a first-time felony offender convicted of a class B felony to 9 years . These ameliorative provisions, including the option for resentencing, were available to individuals, such as Mr. Northington, whose conduct took place prior to the enactment of the reforms. In fact, in 2009, Mr. Northington was resentenced on his convictions stemming from conduct that took place in 2004. See Cross Aff. Exhs. G-I.

10

Relying on current New York law to determine whether Mr. Northington's prior felony convictions constitute convictions for "serious drug offenses" pursuant to 18 U.S.C. 924(e) would not lead to any of the problems that concerned the McNeill Court. In 1999, Mr. Northington was sentenced to three years in custody on his first B felony. This sentence falls squarely within the current permissible sentencing range of one to nine years. See N.Y. Penal L. 70.70(2)(a)(I) (McKinney's 2011). Unlike in McNeill, relying on current New York law would not lead to the "contort[ed]" result of a defendant unlawfully being sentenced to a term of imprisonment that exceeded the maximum prescribed by law. Furthermore, the McNeill Court's concern that looking to current state law would diminish the "culpability and dangerousness" reflected by a defendant's criminal history does not apply here. The overwhelming sentiment expressed by the New York legislature in affecting the changes to the Rockefeller Drug laws was that the old laws – and their maximum sentences – overstated the culpability and dangerousness of prior convictions. See United States v. Darden, 539 F.3d 116, 127 (2d Cir. 2008) ("The Rockefeller Drug Laws allow non-violent drug offenders to be more severely punished than rapists. We need to change that. Let's reform these antiquated laws.") (quoting Governor's State of the State Address, delivered January 7, 2004, 2004 McKinney's Session Law News of N.Y., No. 1 at a-14 (April 2004)); United States v. Hammons, 438 F. Supp. 2d 125, 128 (E.D.N.Y. 2006) (explaining the view of the legislature that the Rockefeller Drug Laws provided "inordinately harsh punishment for low level non-violent drug offenders" and "misdirect[ed]" public funds for the incarceration of these offenders") (quoting the New York Sponsors Memorandum, Ch. 738 (2004)). The Drug Law Reform Acts were enacted to establish a

sentencing scheme that more accurately reflected the culpability and dangerousness demonstrated by prior drug convictions. By making these changes in the law available to defendants convicted of conduct that predated the amendments, the legislature "confirm[ed] that, in the state's view, the new policy of lowered sentences should be made available to everyone convicted of these drug offenses, no matter when the offenses were committed." United States v. Darden, 539 F.3d 116, 127 (2d Cir. 2008). In other words, the reformed laws reflect "the state's current normative judgment about the seriousness of these offenses and this normative judgment plainly applies to past crimes as well as new crimes." Id. at 128.

"To the extent that 924(e)(2)(A)(ii) may be construed as ambiguous, the rule of lenity requires the adoption of the construction that favors the defendant." See United States v. Williams,462 F. Supp. 2d 342, 347 (citing United States v. Bass, 404 U.S. 336 (1971)). In light of the clear intent of the New York legislature to make the ameliorative provisions of its Drug Law Reforms available to defendants previously convicted and sentenced, and the opening left by the Court in McNeill, the defense submits that the Court should apply the current version of New York Penal Law 70.70(2)(a)(I) and should find that the maximum sentence that applies to Mr. Northington's 1999 class B felony conviction is nine years. Only Mr. Northington's subsequent two B felony convictions carried maximum possible sentences of ten years or more and, therefore, only those two convictions constitute "serious drug offenses" within the meaning of 18 U.S.C. 924(e).

**D.     The Indictment Should be Dismissed Because it Does Not
State a Violation of 18 U.S.C. 924(e) or, in the Alternative,
the Court Should Rule that 18 U.S.C. 924(e) Does Not Apply in This Case**

Under Rule 7(c)(1) of the Federal Rules of Criminal Procedure, an indictment

must be a "plain, concise, and definite written statement of the essential facts constituting the

offense charged." Fed.R.Crim.P. 7(c)(1).  Although the statutory language may be used in laying

out the general description of an offense, this is only sufficient if the words of the statute "'fully,

directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary

to constitute the offense intended to be punished.'"  Hamling v. United States, 418 U.S. 87, 117

(1974) (quoting United States v. Carll. 105 U.S. 611, 612 (1882)).

In this case, the government has announced its intent to punish Mr. Northington

for conduct that took place after he sustained "three previous convictions by a court for serious

drug offenses."  The indictment does not, however, contain an underlying factual allegation

regarding the three previous convictions, nor could it, because, as discussed supra, Mr.

Northington has only two previous convictions for serious drug offenses.  In consequence, that

portion of the indictment which alleges that Mr. Northington is subject to the enhanced

sentencing provisions of 18 U.S.C. 924(e) should be dismissed.

In the alternative, if the Court determines that a motion to dismiss the indictment

does not lie, the defense requests a ruling from the Court that Mr. Northington is not subject to

the enhanced sentencing provisions of 18 U.S.C. 924(e).  A ruling from the Court at this stage of

the case would not be an advisory opinion, but rather, would inform Mr. Northington of the

maximum sentence he actually is facing as well as whether he is facing a mandatory minimum

penalty. In order to receive the effective assistance of counsel, and for counsel properly to advise Mr. Northington of his options, the defense needs to know whether Mr. Northington is facing a sentencing range of zero to ten years for violating 18 U.S.C. 922(g) or whether he is facing a range of fifteen years to life pursuant to 18 U.S.C. 924(e). Not only does Mr. Northington need to be advised of the possible sentence he faces by counsel, the Court must advise him on this point prior to accepting any guilty plea. Rule 11 of the Federal Rules of Criminal Procedure requires the Court to "inform the defendant of, and determine that the defendant understands" both "any maximum possible penalty, including imprisonment," see Fed. R. Crim. P. 11(b)(1)(H), and "any mandatory minimum penalty," see Fed. R. Crim. P. 11(b)(1)(I). In order to ensure that Mr. Northington is aware of, and understands, the maximum possible penalty he faces as well as any mandatory minimum penalty the may apply, the defense requests that the Court determine whether Mr. Northington is subject to the enhanced sentencing provisions of 18 U.S.C. 924(e).

## II.    THE COURT SHOULD DISMISS THE INDICTMENT, OR PROVIDE ALTERNATE RELIEF, TO REMEDY THE VIOLATION OF MR. NORTHINGTON'S SIXTH AMENDMENT RIGHT TO COMPULSORY PROCESS

The Sixth Amendment to the United States Constitution provides a defendant in a criminal case with the right "to have compulsory process for obtaining witnesses in his favor." U.S. Const. amend. VI. Pursuant to Sixth Amendment, criminal defendants have right to the government's assistance in compelling attendance of favorable witnesses at trial, and the right to put before jury evidence that might influence determination of guilt. Bohan v. Kuhlmann, 234 F. Supp. 2d 231 (S.D.N.Y.2002). It is a manifest duty of courts to vindicate the guarantees of the

14

confrontation, compulsory process, and due process clauses. U. S. v. Nixon, 418 U.S. 683 (1974). The right of an accused to compel evidence on his behalf is codified in Federal Rule of Criminal Procedure 17. It is "an essential attribute of the adversary system itself." Taylor v. Illinois, 484 U.S. 400, 409 (1988). It is a fundamental element of due process that a defendant be permitted to present his version of facts to the jury so that the jury, after considering the prosecution's and the defense's views, can decide where the truth lies. Washington v. Texas, 388 U.S. 14, 19 (1967).

In the exercise of this right, Mr. Northington subpoenaed documents relating to the Trace report and any information regarding the person who purchased the gun recovered from the cab from the ATF. The ATF has refused to comply with the subpoena, or to provide the requested information, on the ground that it is prohibited from doing so based on "appropriations restrictions." See Cross Aff. Exhs. E & F. The ATF has taken the position that it is prohibited from expending any funds, including salaries and use of government telephones, to respond to the subpoena. The ATF relies on 111 P.L. 117 in support of its position. This statute purports to prohibit the ATF from using any funds appropriated to it under any statute to disclose the information requested in the ATF subpoena, and purports to render such information "immune from legal process" and asserts that it "shall not be subject to subpoena." The statute contains exceptions, however, and permits the information to be disclosed to law enforcement agencies, including federal prosecutors.

The defense submits that a federal statute that purports to categorically place the Trace report beyond the reach of the compulsory process of a criminal defendant, while at the

15

same time permitting a federal prosecutor to access it runs afoul of the Sixth Amendment. In a case like this, the federal government cannot have it both ways: it cannot prosecute a defendant criminally while at the same time impinging on his Sixth Amendment right to compulsory process to aid in his defense. Either the ATF must comply with the subpoena or the indictment should be dismissed. If the federal government does not have sufficient funds to comply with the requirements of the Sixth Amendment, it cannot maintain this prosecution in the face of its violation of Mr. Northington's Sixth Amendment right.

The government could remedy the violation of Mr. Northington's Sixth Amendment right by simply producing to the defense the Trace report. The ATF made clear that it is permitted to provide the Trace report to the government and, indeed, the government's August 25, 2011 indicates that it already possesses the Trace report. Short of dismissing the indictment, the Court could remedy the violation of Mr. Northington's Sixth Amendment right by requiring the government to produce the Trace Report forthwith.

**III.  EVEN ABSENT THE SIXTH AMENDMENT VIOLATION, MR. NORTHINGTON IS ENTITLED TO THE TRACE REPORT PURSUANT TO RULE 16 AND _BRADY v. MARYLAND_**

Rule 16 of the Federal Rules of Criminal Procedure requires that the government permit the defense to inspect and copy items within the government's possession, custody, or control that are material to the preparation of the defense. Fed. R. Crim. P. 16(a)(1)(E)(I). Information is material to the preparation of the defense when it may "enable[] the defendant significantly to alter the quantum of proof in his favor." United States v. Maniktala, 934 F.2d 25, 28 (2d Cir. 1991) (quoting United States v. Ross, 511 F.2d 757, 762-63 (5th Cir. 1975)).

16

Information subject to disclosure under Rule 16(a)(1)(E)(I) does not have to be admissible at trial, but may be material to the defense if it is relevant to the case and may lead to the discovery of admissible evidence, if it can be used to counter the government's case, or if it can be used to bolster a defense. See United States v. Stevens, 185 F.2d 1175, 1180 (2d Cir. 1993). Items that provide investigative leads or may lead to inculpatory evidence inherently are material to the preparation of the defense. This is especially true where the information bears on a critical issue in the case or where the government's proof is otherwise weak. See id. at 1181.

Brady v. Maryland also requires of the disclosure of evidence that is material to the defense. Specifically, it requires that evidence "favorable to the accused" and in the possession of the prosecution must be turned over to the defense. Brady v. Maryland, 373 U.S. 83, 87 (1963). The Brady rule is grounded in due process concerns for the an accused's right to a fair trial. Information that tends to exculpate a defendant, or that could create a reasonable doubt at trial, is material pursuant to Brady.

A trace report that identifies someone other than the defendant as the purchaser of the gun is subject to production under Rule 16 and constitutes Brady material. Such a report tends to exculpate the defendant "and [is] favorable to his theory of the case in that evidence that the gun belonged to someone else is certainly consistent with . . .[his] claim that it was not his." Government of Virgin Islands v. Fahie, 304 F. Supp. 2d 669, 674-75 (D.V.I. 2004) (finding Brady violation where prosecution failed to produce Trace report sufficiently in advance of trial). Suppression by the government of the Trace report would constitute a Brady violation because it would preclude the defense from "investigat[ing] and possibly develop[ing] evidence to bolster

17

his defense that [he] did not know that there was a weapon in the car." Id. at 676. Especially in a case in which the defendant does not own the car in which the gun is found and other people were in the car on the night the gun was found, suppression of a trace report violates Brady because the report may allow the defendant to link the gun owner to one of the other passengers, thereby negating the government's contention that he possessed the gun. Id.

The government is in possession of a Trace report that asserts that someone other than Mr. Northington bought the gun at issue in this case. This information is material to the preparation of the defense. The defense must be able to investigate the purchaser of the gun, trace its chain of custody, and investigate its presence in the cab. There is no physical evidence linking Mr. Northington to the gun. No fingerprint or DNA samples were taken from the gun and the government has informed defense counsel that any such samples taken at this point would be contaminated because the gun has been handled by various law enforcement officers in the course of testing the gun's operability. The gun was recovered from the floor of a public livery cab, not from Mr .Northington's person. In these circumstances, following the trail of other individuals who possessed the gun and may have left it in the cab is crucial to the defense.

The Federal Defenders cannot discharge its duty to zealously represent Mr. Northington without the information contained in the Trace Report. That information absolutely is material to the preparation of Mr. Northington's defense. It may lead to additional exculpatory evidence and, on its face, could bolster Mr. Northington's theory of defense. The defense has been unable to obtain the information by subpoena issued to the ATF, as discussed in Section II, supra, and has been unable to obtain it independently based on the information provided in the

18

government's August 25 letter. In consequence, the defense requests that the Court order the government to provide the Trace Report to the defense pursuant to Rule 16 and <u>Brady v. Maryland</u>.

## IV. THE COURT SHOULD SUPPRESS THE PHYSICAL EVIDENCE AND ANY STATEMENTS RECOVERED AS A RESULT OF THE ILLEGAL SEARCH AND SEIZURE OF THE CAB

The physical evidence in this case should be suppressed because it was obtained as a result of the illegal search and seizure. The police had no reasonable, articulable suspicion to detain, seize, or arrest Mr. Northington, <u>see Terry v. Ohio</u>, 392 U.S. 1, 30 (1968); <u>United States v. Bayless</u>, 201 F.3d 116, 132 (2d Cir.2000), and they did not have the authority to remove him from the vehicle and place him in handcuffs. <u>Ybara v. Illinois</u>, 444 U.S. 85, 93 (1979); <u>United States v. Jaramillo</u>, 25 F.3d 1146, 1151 (2d Cir. 1994).

"Without probable cause or reasonable suspicion based on objective facts, a traffic stop violates the Fourth Amendment." <u>United States v. Webster</u>, 2011 US. Dist. LEXIS 45143, at *47 (N.D.N.Y. 2011); <u>see also Delaware v. Prouse</u>, 440 U.S. 648, 663 (1979) (holding that "persons in automobiles on public roadways may not for that reason alone have their travel and privacy interfered with at the unbridled discretion of police officers"). "Any evidence seized based upon an illegal stop 'is subject to the fruit of the poisonous tree doctrine,' and may be suppressed." <u>United States v. Scopo</u>, 19 F.3d 777, 781 (2d Cir. 1994) (citing <u>United States v. Hassan El</u>, 5 F.3d 726, 729 (4th Cir. 1993). Any statements taken from Mr. Northington as a result of this unlawful search and seizure are the unlawful fruit of the illegal seizure and any statements obtained by the police must therefore be suppressed as well. <u>Brown v. Illinois</u>, 422

19

U.S. 590 (1975).

The government's proffered basis for stopping the cab is contained in the Complaint. The Complaint alleges that the cab "drove at a high speed and changed lanes without signaling." See Cross Aff. Exh. B at ¶ 2(b). But these assertions are contradicted by Mr. Northington's declaration. Mr. Northington, a passenger in the cab, did not observe any traffic infractions, did not observe the cab driving at a high rate of speed, and did not observe the cab change lanes without signaling. See Cross Aff. Exh. C at ¶ 3. Moreover, the discovery produced in this case did not contain a ticket issued to the cab driver for either of these alleged traffic infractions. See Cross Aff. ¶ 5.

After law enforcement seized the cab, there was no basis for ordering Mr. Northington out of the car and placing him under arrest. As Mr. Northington's declaration makes clear, there was no gun visible at the time he was removed from the cab and placed under arrest in handcuffs. He was not behaving suspiciously and the officers had no articulable basis for concluding that their safety was at risk or that criminal activity was afoot.

Because law enforcement had no constitutional basis for stopping the cab, any evidence and statements recovered as a result of the stop must be suppressed. If the Court is not prepared to order suppression on the basis of the current record, the defense requests that the Court hold a factual hearing on this issues raised in connection with this motion.

## CONCLUSION

For the foregoing reasons, the defense respectfully requests that the Court (1) dismiss the

indictment and (2) suppress the evidence and statements recovered as a result of the illegal search

and seizure. In the alternative, the defense requests that the Court (A) rule that Mr. Northington

is not subject to the enhanced sentencing provisions of 18 U.S.C. 924(e); (B) order the

production of the Trace Report; (C) hold a hearing to determine whether the stop of the cab

constituted an illegal search and seizure; and (D) order other relief that the Court deems just and

proper.

Dated:  New York, New York
        November 14, 2011

DAVID E. PATTON, ESQ.
Federal Defenders of New York
Attorney for Defendant
**ANTHONY NORTHINGTON**
52 Duane Street - 10th Floor
New York, New York 10007
Tel.: (212) 417-8732

**PEGGY M. CROSS, ESQ.**
Of Counsel

TO:  PREET BHARARA, ESQ.
     United States Attorney
     Southern District of New York
     One. St. Andrew's Plaza
     New York, New York 10007
     Attn: **RACHEL MAIMIN, ESQ.**
          Assistant United States Attorney

21