# Exhibit H

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x

UNITED STATES OF AMERICA              :

    v.                                    :        12 Cr. 452 (PKC)

RORY JOHNSON PRESSLEY,                :

        Defendant.                     :

-----------------------------------------------------------x

## REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENSE MOTIONS TO SUPPRESS AND TO DISMISS THE INDICTMENT

DAVID E. PATTON, ESQ.
Federal Defenders of New York, Inc.
Attorney for Defendant
  **Rory Johnson Pressley**
52 Duane Street - 10th Floor
New York, New York 10007
Tel.: (212) 417-8700

**PEGGY CROSS-GOLDENBERG, ESQ.**
**KATHERINE M. ROMANO, ESQ.**

  Of Counsel

TO:  **PRETT BHARARA, ESQ.**
      United States Attorney
      Southern District of New York
      One St. Andrew's Plaza
      New York, New York 10007
      Attn:  **DANIEL S. NOBLE, ESQ.**
            **JUSTINA GERACI, ESQ.**
            Assistant United States Attorneys

Rory Johnson Pressley respectfully submits this memorandum of law in reply to the government's opposition to his motion for suppression of his statements and DNA evidence, and his motion to dismiss the indictment or, in the alternative, seeking a ruling that he is not subject to the enhanced sentencing provisions of 18 U.S.C. § 924(e). Mr. Pressley contends that his statements were obtained in violation of his rights and that the DNA evidence was seized based on a search warrant containing materially false statements. Mr. Pressley also contends that he is not subject to the fifteen-year mandatory minimum sentence provided for in 18 U.S.C. § 924(e) because he does not have three prior convictions for "serious drug offenses" within the meaning of that statute.

The government's opposition to Mr. Pressley's suppression motion fails to address or resolve several significant factual disputes, illustrating why a hearing is necessary to resolve Mr. Pressley's motion. A hearing is required to resolve factual disputes regarding the circumstances of Mr. Pressley's pre-arraignment interview and detention, including a dispute as to whether Mr. Pressley was told that the interview was "mandatory" and that he could not get an appointed attorney until after the interview. A hearing is also needed to resolve the reason for the delay in Mr. Pressley's arraignment; Mr. Pressley has alleged that the delay in his arraignment was purposefully caused by the prosecutor's desire to interview him in the absence of counsel. With respect to the search warrant affidavit, a hearing is required to resolve the factual dispute regarding whether the affiant overstated or misrepresented the arresting officer's report regarding the circumstances of the offense.

The government's opposition to Mr. Pressley's motion to dismiss the indictment rests on an incorrect interpretation of the Supreme Court's decision in McNeill v. United States, 131 S. Ct. 2218 (2011). Because Mr. Pressley's case fits within the exception left open by the Court in

1

McNeill, this Court should conclude that Mr. Pressley's convictions do not constitute "serious drug offenses" within the meaning of Section 924(e).

**A. Mr. Pressley's Statements Were Obtained in Violation of His Constitutional Rights.**

The government takes the position that the Assistant District Attorney's ("ADA's") "meticulous administration" of Miranda rights at the pre-arraignment interview cured any problem with respect to whether Mr. Pressley's right to remain silent was "scrupulously honored" and whether his statements were voluntary. (Gov't Mem. in Opp. at 11, 13-14.) As the Supreme Court has held, however, "it would be absurd to think that mere recitation of the litany [of Miranda warnings] suffices to satisfy Miranda in every conceivable circumstance." Missouri v. Seibert, 542 U.S. 600, 611 (2004). In this case, just before the interview, a detective told Mr. Pressley that the interview was "mandatory," that Mr. Pressley had to participate in the interview because he had been arrested for a gun-related offense, and that Mr. Pressley could not get an attorney until after the interview. (Cross-Goldenberg Aff. Ex. I ¶ 5.) The detective then led Mr. Pressley into the interview room and stayed there throughout the interview. The ADA's statement in the interview that Mr. Pressley had the right "to have an attorney present during any questioning now or in the future" (see Cross-Goldenberg Aff. Ex. K) was meaningless and ineffective, under the circumstances, given that Mr. Pressley had just explicitly asked the detective whether he was permitted to have an attorney and the detective had told him that he would not get an attorney until after the interview. (See Cross-Goldenberg Aff. Ex. I ¶ 5.)

There is no reasonable explanation, on these facts, that the government can proffer for why Mr. Pressley invoked his right to remain silent at 7:00 a.m. but later that day, for no apparent reason, waived his right to remain silent and made statements to the ADA. The reason Mr. Pressley made statements in the pre-arraignment interview is that, in light of the circumstances

2

and what the detective said to him, Mr. Pressley believed he had no real choice about whether to speak to the ADA.[1]

The government's opposition repeatedly states that there is "no evidence" that Mr. Pressley's arraignment was purposefully or unreasonably delayed. (Gov't Mem. in Opp. at 14, 15, 16.) By taking Mr. Pressley out of the normal administrative process of arrest, appointment of counsel, and arraignment, solely for purposes of the pre-arraignment interview, however, the DA's office purposefully delayed Mr. Pressley's arraignment in order to induce Mr. Pressley to make inculpatory statements before an attorney had been appointed to represent him. The government has failed to make any factual showing that the pre-arraignment interview did not impact the date and time of Mr. Pressley's arraignment; indeed, it is difficult to see why an individual arrested at 4:30 a.m. would not be arraigned that same day, given that the arrest processing would have been completed in the early morning hours. The fact that the videotaped portion of the pre-arraignment interview lasted only ten minutes (a fact repeatedly emphasized by the government, see Gov't Mem. in Opp. at 9, 13, 14, 16) does not itself establish that Mr. Pressley's arraignment was not delayed by the requirement that he participate in the interview prior to arraignment. To the extent the government disputes whether forced participation in the pre-arraignment interview process constituted a purposeful delay in Mr. Pressley's arraignment, a hearing is needed to resolve that dispute.

To permit the government to benefit from the significant delay between Mr. Pressley's arraignment and arrest, as well as from the practice of conducting pre-arraignment interviews, would lead to an unfair result. At the outset, Mr. Pressley was subject to a state prosecution. In

---

[1] Although the government's memorandum suggests that the ADA explicitly told Mr. Pressley that the interview was not mandatory, the ADA made no statement to that effect. (Cross-Goldenberg Aff. Exs. K, L.)

3

June 2012, over a year after his April 2011 arrest and after the state had dismissed and sealed the charges against him, he was indicted in federal court. Mr. Pressley is now facing exposure in federal court to a potential mandatory minimum sentence of fifteen years, but he is at a disadvantage compared to the average federal defendant because he was initially arrested, detained, interviewed, and arraigned in state court; thus, he lacks the same ability to challenge the circumstances of his pre-arraignment detention.

If Mr. Pressley's case initially had been brought in federal court, he would not have been subject to a pre-arraignment interview. In light of criticisms by the Second Circuit (criticisms that apply with equal force to the facts of this case), the U.S. Attorney's Office no longer conducts pre-arraignment interviews. See, e.g., United States v. Foley, 735 F.2d 45, 48 (2d Cir. 1984) (criticizing pre-arraignment interviews); United States v. Perez, 733 F.2d 1026, 1036 (2d Cir. 1984) (same). In addition, had Mr. Pressley been subject to a thirty-six hour delay between arrest and arraignment in federal court, under the same circumstances present in this case, he would have a strong argument based on federal precedent that any statements made during that period of unreasonable delay should be suppressed due to the delay. See, e.g., Perez, 733 F.2d at 1036 (affirming suppression of statements made eight hours after arrest, where officers delayed the initial appearance in order to conduct interview of defendant); United States v. Pena Ontiveros, 547 F. Supp. 2d 323, 345-46 (S.D.N.Y. 2008) (suppressing statements due to unnecessary delay in arraignment, where defendants were arrested between 3 and 4 a.m. and were in custody for 15-18 hours before making inculpatory statements).[2] Although federal law regarding pre-arraignment delay and interrogation does not necessarily govern in Mr. Pressley's

---

[2] At one point in its memorandum in opposition, the government incorrectly states that Mr. Pressley's pre-arraignment interview took place nine hours after he was arrested. (See Gov't Mem. in Opp. at 13.) In fact, as the government acknowledges elsewhere in its memorandum, the interview took place over twelve hours after Mr. Pressley's arrest. (See id. at 14.)

4

case, see United States v. Alvarez-Sanchez, 511 U.S. 350, 358 (1994), this Court should, at a minimum, consider the fact that federal courts have routinely suppressed statements obtained during unreasonable and unnecessary periods of pre-arraignment detention.[3] In short, to permit the government to benefit from the state prosecutors' conduct in this case, which would not be permissible in federal court, would lead to an unfair result.

### B. A Hearing is Warranted to Resolve Mr. Pressley's Challenge to the Search Warrant Affidavit.

The government's opposition states that it is "of no consequence" that the search warrant affidavit contains visual details that were not included in the police reports (Gov't Mem. in Opp. at 19) and that there is "no evidence" to place in question the reliability of the affiant (Gov't Mem. in Opp. at 18). The government fails to address or explain, however, why numerous state court documents created at or near the time of Mr. Pressley's arrest fail to contain significant details regarding the object Mr. Pressley was seen to have had in his hand, but those significant details appear in an affidavit dated nearly eight months after the arrest. (Compare Cross-Goldenberg Aff. Exs. C-G with Ex. N at Aff. ¶ 4(b).) The fact that the words "large" and "metallic" appear in the search warrant affidavit, but not in the sworn state court complaint or any contemporaneously prepared state court record, is significant and casts doubt on whether the search warrant affidavit accurately reports what the arresting officer saw.

The search warrant affidavit's description of the object as "large" and "metallic" strongly suggests to the magistrate judge that the object was, in fact, the gun recovered from the area.

---

[3] Because Mr. Pressley's arraignment occurred in state court, the government alleges that, as long as the arraignment took place within 48 hours of arrest, it is constitutionally permissible, citing County of Riverside v. McLaughlin, 500 U.S. 44, 56 (1991). (See Gov't Mem. in Opp. at 15.) Notably, however, in McLaughlin, the Supreme Court made clear that a probable cause determination does not "pass[] constitutional muster simply because it is provided within 48 hours." 500 U.S. at 56. If the arrested individual can prove that the probable cause determination "was delayed unreasonably" such as "for the purpose of gathering additional evidence to justify the arrest," there could be a constitutional violation. Id.

5

Without these words, and the material omissions described in Mr. Pressley's motion, there is no "fair probability" that the DNA swabs from Mr. Pressley would have produced evidence of a crime. See Illinois v. Gates, 462 U.S. 213, 238 (1983).[4] At a minimum, a hearing is required to resolve the questions of (1) what Lieutenant Doute told Officer Madera about his observations, and (2) why Lieutenant Doute told Officer Madera that the object was "large" and "metallic," when he had not reported those facts in connection with Mr. Pressley's arrest report, complaint report, or state court complaint, among other documents.

### C. Mr. Pressley's Prior Convictions Do Not Constitute "Serious Drug Offenses" Under 18 U.S.C. § 924(e).

While the Supreme Court has held that, ordinarily, a district court looks to the maximum possible sentence in effect at the time of the prior offense for purposes of Section 924(e), see McNeill v. United States, 131 S. Ct. 2218, 2221-22 (2011), the government does not dispute that footnote 1 of McNeill creates an exception to the Supreme Court's decision for cases that "concern a situation in which a State subsequently lowers the maximum penalty applicable to an offense and makes that reduction available to defendants previously convicted and sentenced for that offense." McNeill, 131 S. Ct. at 2224 n.1. The differences between Mr. Pressley's case and McNeill, including the fact that Mr. Pressley's case fits within the exception left open by footnote 1 in McNeill, warrant a finding that Mr. Pressley's prior convictions do not constitute "serious drug offenses" under 18 U.S.C. § 924(e).

---

[4] While the government describes this as a "far cry" from United States v. Wells, 223 F.3d 835, 838-39 (8th Cir. 2000), because the statement in Wells was "found to have been made knowingly and recklessly, and to have been misleading" (see Gov't Mem. in Opp. at 19 n.5), this finding in Wells was made after a Franks hearing at which the officer admitted that the affidavit contained a "poor choice of words that greatly expanded on what the witness really said." It is far from clear from the Wells decision that the defendant in that case had made any showing prior to the hearing that was greater than that which Mr. Pressley presents as grounds for a hearing.

6

New York classifies felonies on a scale of "A" through "E," N.Y. Penal L. § 55.05(1), with Class A felonies representing the most serious offenses with the highest level of exposure to maximum penalties and Class E felonies representing the least serious felonies. See N.Y. Penal L. §§ 70.00(2), 70.70(2). In Mr. Pressley's case, all of the felonies cited by the government as predicate offenses for purposes of Section 924(e) are Class C felonies. In New York, with the enactment of the Drug Law Reform Acts ("DLRA"), the state subsequently lowered the maximum penalties applicable to Class C felony drug offenses, and the state made that reduction available to defendants previously convicted and sentenced. See N.Y. Crim. Pro. L. § 440.46(2).[5]

The government correctly notes that New York prioritized the resentencing of individuals serving sentences of significant indeterminate length, i.e., individuals convicted of at least one Class B felony drug offense serving a sentence with a maximum term of at least three years. N.Y. Crim. Pro. L. § 440.46(2). Although Mr. Pressley, because he was convicted only of less serious offenses (i.e., no Class B felonies), was not eligible for re-sentencing on his Class C felonies, it cannot be disputed that New York did make retroactive sentencing reductions available to individuals sentenced for Class C felonies; therefore, Mr. Pressley's case fits squarely within footnote 1 of McNeill. The footnote does not limit the exception to cases in which the particular defendant at issue was eligible for re-sentencing, instead, the footnote refers to "state action" in which the state "makes that reduction available to defendants previously convicted and sentenced for that offense." McNeill, 131 S. Ct. at 2224 n.1. The legislature did make sentencing reductions available to individuals convicted of Class C felony drug offenses,

---

[5] Although the government states that the amendments "typically applied only prospectively," (see Gov't Mem. in Opp. at 22) it is clear that the ameliorative provisions of the DLRAs have been made available to individuals previously convicted and sentenced. In fact, as of June 1, 2012, 645 individuals had been resentenced as a result of the amendments. (See Cross-Goldenberg Aff. Ex. R at 37.)

7

reflecting a considered judgment that the penalties for those Class C felonies overstated the culpability of convicted offenders.

This is not the first time the issue has arisen in a Southern District case. In <u>United States v. Northington</u>, 11 Cr. 678 (RJS), the defendant was not subject to the enhanced sentencing provisions of Section 924(e), despite three prior drug trafficking convictions that, at the time of conviction, carried maximum sentences of more than ten years. Section 924(e) did not apply in that case because the DLRA had lowered the maximum penalty on the defendant's first B Felony conviction to nine years, thus removing it from the statutory definition of "serious drug offense." The lower, post-DLRA maximum was the relevant maximum for Section 924(e) purposes even though Mr. Northington himself had not been eligible to be resentenced on that particular conviction, obtained in 1999, because he already had finished serving his sentence. Neither the Court nor the Probation Department sought to apply the enhanced sentencing provisions of Section 924(e) and Mr. Northington was sentenced to 90 months' incarceration.

Here, as in <u>Northington</u>, the Court should look to the lower, post-DRLA maximum penalties in assessing whether a prior conviction constitutes a "serious drug offense." The Second Circuit has explained that the reformed laws reflect "the state's current normative judgment about the seriousness of these offenses and this normative judgment plainly applies to past crimes as well as new crimes." <u>United States v. Darden</u>, 539 F.3d 116, 128 (2d Cir. 2008). As was the case in <u>Northington</u>, Mr. Pressley's sentences on his prior convictions all are consistent with the post-reform sentencing scheme, meaning the Court would not have to find any of his prior sentences unlawful to hold that Section 924(e) does not apply in this case.

Looking to the post-reform maximum would not "'erase' Mr. Pressley's prior convictions for ACCA purposes," as the government fears. Rather, it would properly reflect the New York

8

legislature's view of the seriousness of his prior convictions. The DLRAs make clear that, at the time of Mr. Pressley's prior convictions, the law overstated the culpability and dangerousness reflected in his offenses. Finding Mr. Pressley subject to the enhanced sentencing provisions of Section 924(e) would continue to overstate that culpability and dangerousness, despite the legislature's clear intent that the reforms apply to defendants previously convicted and sentenced under the old laws.

Even under the government's reading of the McNeill footnote, Mr. Pressley would fall within the exception if he had also been convicted of a Class B felony, making him eligible for resentencing on his Class C felony as well. This would lead to an absurd result, in which having committed a more serious crime would actually benefit a defendant for purposes of ACCA. This absurdity illustrates why the exception in the McNeill footnote focuses on state action with respect to an offense, not with respect to an individual defendant. In this case, New York did make the reduction in sentence available to defendants previously convicted and sentenced for Class C felony drug offenses; therefore, the exception applies.

Because the DLRAs fall squarely within the exception left open in McNeill, and because Mr. Pressley's prior sentences, which all are consistent with the current sentencing scheme, do not raise any of the issues raised by the prior sentence at issue in McNeill, the defense submits that Mr. Pressley is not subject to the enhanced sentencing provisions of Section 924(e).

## CONCLUSION

For the reasons stated above, it is respectfully submitted that the Court should grant Mr. Pressley's motion to suppress the statements obtained in violation of his constitutional rights and the DNA evidence obtained via the December 15, 2011 search warrant. At a minimum, a hearing is required pursuant to Franks v. Delaware, 438 U.S. 154 (1978). In addition, because Mr. Pressley has not been previously convicted of three "serious drug offenses" within the meaning of Section 924(e), the Court should dismiss the Indictment or, in the alternative, issue a ruling confirming that Mr. Pressley is not subject to the sentencing enhancements of Section 924(e).

Dated: New York, New York
September 28, 2012

Respectfully submitted,

David E. Patton, Esq.
FEDERAL DEFENDERS OF NEW YORK, INC.

By: _/s/ Peggy Cross-Goldenberg_
Peggy Cross-Goldenberg, Esq.
Katherine M. Romano, Esq.
Attorneys for **Rory Johnson Pressley**
52 Duane Street - 10th Floor
New York, NY 10007
Tel.: (212) 417-8732/(212) 417-8769

10