# Exhibit J

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| - v. - | : | 13 Cr. 582 (RPP) |
| ANDRE CALIX, | : | |
| DEFENDANT. | : | |

------------------------------------------------------------------x

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANT'S PRETRIAL MOTIONS

 

Federal Defenders of New York
Attorney for Defendant
**Andre Calix**
52 Duane Street, 10th Floor
New York, New York  10007
Tel.: (212) 417-8772

**Sarah Baumgartel, Esq.**
  Of Counsel

TO:   PREET BHARARA, ESQ.
       United States Attorney
       Southern District of New York
       One St. Andrew's Plaza
       New York, New York  10007
       Attn: **Richard Cooper, Esq.**
       Assistant United States Attorney

Defendant Andre Calix respectfully submits this Memorandum of Law in support of his pretrial motion to dismiss Count Nine of the Indictment against him and to suppress evidence, including a firearm and statements. For the reasons described below, the Court should grant defendant's motions or, in the alternative, conduct an evidentiary hearing.

## BACKGROUND

Defendant Andre Calix is charged in a nine-count Indictment with seven counts of bank robbery, in violation of 18 U.S.C. § 2113(a); one count of brandishing a firearm during a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A)(ii); and one count of possessing a firearm following a felony conviction, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e). *See* Affidavit of Sarah Baumgartel, Esq. (Baumgartel Aff.) ¶ 4. He is specifically charged under the Armed Career Criminal Act (ACCA) based on allegations that he possessed a gun after sustaining three "serious" felony drug offense convictions.

The charges against Mr. Calix stem from a series of bank robberies that he is alleged to have committed from June through July 2013, as described in the federal complaint.

A federal warrant for Mr. Calix's arrest was issued on July 11, 2013. *Id.* ¶ 3. On the morning of July 18, Mr. Calix was arrested in the apartment where he had slept the previous night. As he describes in his affidavit, this apartment is inside of a residential building. *See* Affidavit of Andre Calix (Calix Aff.) ¶ 3. Early that morning, while Mr. Calix was still asleep in his bedroom, he heard a commotion outside his closed door. *Id.* ¶ 4. Almost immediately, several law enforcement officers broke into the room. They drew their guns and ordered Mr. Calix onto the ground. *Id.* ¶ 5. He followed their order.

2

The officers immediately began asking Mr. Calix questions. They demanded his name and to see identification. *Id.* They quickly identified him as the person named in their warrant, handcuffed and arrested him. Officers also began searching his apartment.

At that time, officers did not inform Mr. Calix of his so-called *Miranda* rights, including his right not to answer questions and to consult with a lawyer. *Id.* ¶ 7. Instead, they moved him to the lobby of the building and proceeded to question him without these warnings. Officers made repeated statements that made Mr. Calix feel as if he needed to answer their questions. For example, they told him that if he cooperated, the prosecutor would go easier on him. *Id.* ¶ 8. They said answering questions was in his interest. They said he could be facing life in prison, and answering their questions was his best chance at getting less prison time. Because of this pressure, Mr. Calix answered the officers' questions related to bank robberies and made incriminating statements. *Id.* ¶ 9.

Officers also solicited Mr. Calix's consent to search the apartment. He had already been arrested and seen them begin this search, so he did not believe he truly had the right to prevent officers from searching. *Id.* ¶ 10. During their search of the apartment, officers apparently discovered a firearm concealed inside a small bag, inside the frame of a mattress. Baumgartel Aff. ¶ 5.

After speaking with him in the apartment and lobby, officers took Mr. Calix back to their office. Calix Aff. ¶ 11. They continued interrogating him. Approximately two hours after his arrest, and after he had already answered questions about bank robberies, officers gave Mr. Calix an Advice of Rights form to sign. *Id.* ¶ 12; Baumgartel Aff. ¶ 6. By that time, the warnings were meaningless to him.

3

In addition to multiple bank robberies, Mr. Calix was charged with two counts based specifically on the firearm officers recovered during the search of his apartment. He was charged with brandishing this gun during a crime of violence (Count Seven) and illegally possessing the gun following prior felony convictions, including three prior drug felony convictions (Count Nine).

## ARGUMENT

### I. The Court Should Hold That Mr. Calix is Not Subject to the Enhanced Penalties of § 924(e)

Count Nine of the Indictment charges Mr. Calix with violating 18 U.S.C. §§ 922(g) and 924(e) by knowingly possessing a firearm after having "been previously convicted in a court of a crime punishable by one year," and having had three prior qualifying drug convictions. In fact, Mr. Calix does not have three prior qualifying "serious drug offense[s]," meaning he is not subject to the enhanced sentencing provisions of § 924(e). The Court should therefore dismiss Count Nine. If the Court determines that dismissal is not appropriate, the Court should rule that Mr. Calix is not subject to these enhanced sentencing provisions so that he may properly be advised of the maximum possible penalty he faces and whether he is subject to any mandatory minimum penalty on Count Nine.

#### A. Mr. Calix Does Not Have Three Prior "Serious" Drug Felonies

Count Nine charges Mr. Calix under the Armed Career Criminal Act (ACCA). ACCA provides that a person who violates § 922(g) and has three previous convictions for either a "violent felony" or a "serious drug offense," committed on different dates, shall be sentenced to a mandatory minimum term of fifteen years' imprisonment. *See* 18 U.S.C. § 924(e)(1). Whereas the maximum penalty for possessing a firearm following a felony

4

Case 1:14-cv-00733-ER Document 47-10 Filed 09/03/15 Page 6 of 14
Case 1:15-cr-00582-LAP Document 13 Filed 12/29/15 Page 6 of 13

conviction is ordinarily ten years, an individual subject to § 924(e)'s enhanced sentencing provisions faces a mandatory minimum sentence of fifteen years.

Mr. Calix has never previously been convicted of a violent felony as that term is defined in ACCA. *See* 18 U.S.C. § 924(e)(2)(B). He also has no prior federal drug convictions. However, the government alleges that Mr. Calix is subject to § 924(e) because he has committed three "serious" state drug offenses. The government is wrong.

Section 924(e)(2)(A) defines a "serious drug offense" as a violation of certain enumerated federal drug laws or "an offense under State law, involving manufacturing, distributing, or possessing with intent to . . . distribute, a controlled substance . . . for which a maximum term of imprisonment of ten years or more is prescribed by law."

In the Indictment against Mr. Calix, the government lists three prior drug convictions:

> (i) a September 5, 2012 conviction for Criminal Sale of a Controlled Substance in the Third Degree, a Class B felony in violation of N.Y. Penal Law § 220.39;
>
> (ii) an August 30, 2001 conviction for Criminal Possession of a Controlled Substance in the Third Degree with Intent to Sell, a Class B felony in violation of N.Y. Penal Law § 220.16; and
>
> (iii) a March 3, 2005 conviction for Attempted Criminal Possession of a Controlled Substance in the Third Degree with Intent to Sell, a Class C felony in violation of N.Y. Penal Law § 220.16.

The maximum penalties for New York drug offenses are set forth in Penal Law § 70.70.

Focusing on Mr. Calix's 2005 conviction: This offense was committed on January 30, 2005. Mr. Calix was convicted in March 2005 and was sentenced in November 2005. At that time, as still today, the absolute maximum sentence of imprisonment for even a second felony Class C drug offense is less than ten years. *See* N.Y. Penal Law § 70.70 (2013)

5

(providing maximum penalty of five and a half years for first Class C drug offense, and maximum penalty of eight years for second Class C drug offense); N.Y. Penal Law § 70.70(3)(b)(ii) (2005) (same); *see also People v. Overton*, 86 A.D.3d 4, 11 (N.Y. App. Div. 2011) (explaining that New York's initial 2004 Drug Law Reform Act was effective January 13, 2005). By the plain language of § 924(e), this 2005 conviction cannot qualify as a serious prior drug offense for purposes of ACCA.[1] Because Mr. Calix does not have three prior serious drug offenses, he does not fall under this statute.

### B. The Court Should Dismiss Count Nine or Rule That Mr. Calix is Not Subject to § 924(e)

Under Rule 7(c)(1) of the Federal Rules of Criminal Procedure, an indictment must be a "plain, concise, and definite written statement of the essential facts constituting the offense charged." Although the statutory language may be used in laying out the general description of an offense, this is only sufficient if the words of the statute "'fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offense intended to be punished.'" *Hamling v. United States*, 418 U.S. 87, 117 (1974) (quoting United States v. Carll, 105 U.S. 611 (1882)).

In this case, the government has charged Mr. Calix with a violation of §§ 922(g) and 924(e) in Count Nine. But the Indictment does not contain a sufficient underlying factual

---

[1] In addition to the drug offenses listed in the Indictment, Mr. Calix has additional prior drug convictions. None of these qualify as a "serious" drug offense within the meaning of ACCA. In particular, Mr. Calix has one additional prior Class B offense which would not qualify as a predicate felony based on the reasoning set forth in *United States v. Alonzo Jackson*, 13 Cr. 142 (PAC) (S.D.N.Y. Sep. 4, 2013), and other similar cases. Notably, Mr. Calix has been sentenced to well below ten years on each of his prior drug convictions.

6

allegation regarding the three previous convictions. Nor could it, because Mr. Calix does not have three prior qualifying convictions. As a result, Count Nine should be dismissed.

In the alternative, if the Court determines that dismissal is not appropriate, the Court should rule that Mr. Calix is not subject to the enhanced sentencing provisions of § 924(e). *See United States v. Alonzo Jackson*, 13 Cr. 142 (PAC) (S.D.N.Y. Sep. 4, 2013) (ruling pretrial that defendant was not subject to § 924(e)). A ruling at this stage is necessary to inform Mr. Calix of the maximum sentence he actually faces, as well as any mandatory minimum penalty. In order to receive the effective assistance of counsel, and for counsel properly to advise Mr. Calix of his options, the defense needs to know whether he is facing a sentencing range of zero to ten years for this charged offense, or a range of fifteen years to life. In addition, both counsel and the Court must be able to accurately advise Mr. Calix of the possible sentence he faces should he decide to plead guilty. *See* Fed. R. Crim. P. 11.

In order to ensure that Mr. Calix is aware of, and understands, the maximum possible penalty he faces as well as any mandatory minimum penalty that may apply, the defense requests that the Court determine whether Mr. Calix is subject to § 924(e).

## II. The Court Should Suppress Evidence and Statements Unlawfully Obtained From Mr. Calix

Next, pursuant to the Fourth and Fifth Amendments, the Court should suppress evidence uncovered in the unlawful search of Mr. Calix's apartment and statements obtained in violation of *Miranda v. Arizona*.

7

A.  **The Government Cannot Prove That Mr. Calix Voluntarily Consented to a Search of His Apartment**

Mr. Calix is charged with two counts focusing on his illegal possession of a firearm. This firearm, along with other potential evidence against Mr. Calix, was obtained in a search of his apartment following his arrest. Law enforcement had no legal basis for this search, so the firearm and other evidence must be suppressed.

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." Physical entry by police into a person's home is the "chief evil against which the wording of the Fourth Amendment is directed." *United States v. U.S. Dist. Court for Eastern Dist. of Mich.*, 407 U.S. 297, 313 (1972); *see also Payton v. New York*, 445 U.S. 573, 601 (1980).

As a result, the entry and search of a person's home without a warrant supported by probable cause is per se unreasonable, with only a few specifically established and well-delineated exceptions. *See, e.g.*, *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973); *Katz v. United States*, 389 U.S. 347, 357 (1967). Officers appear to have had a warrant for Mr. Calix's arrest, but did not have a search warrant for the apartment.

Consent is one exception to the warrant requirement. However when the government seeks to rely upon consent to justify a search, it must prove "that the consent was, in fact, freely and voluntarily given." *Schneckloth*, 412 U.S. at 222.

To gauge voluntariness, courts consider a defendant's personal characteristics, the length of his detention by police, whether he knows he has a constitutional right to refuse consent, and the conduct of law enforcement. *See, e.g.*, *id.* at 227; *United States v. Puglisi*, 790 F.2d 240, 243 (2d Cir. 1986). Consent obtained from a person in custody requires more

8

careful scrutiny, and an individual's consent is not voluntary when it is merely submission to apparent lawful authority. *Schneckloth*, 412 U.S. at 227; *Royer*, 460 U.S. at 497.

Weighing all of these factors, the government cannot establish free and voluntary consent here. Officers began searching Mr. Calix's room before he even gave consent. He was in custody the entire time. He was subject to a continual show of force by multiple officers, including them breaking into the room and drawing their guns. He did not understand that he had the right to refrain from answering questions or to refuse consent to search. Officers explicitly stated that they would search regardless of what Mr. Calix said, and that they could obtain a warrant.

Under these circumstances, consent was nothing more than acquiescence to a show of authority and was not voluntary. *See United States v. Isiofia*, 02 Cr. 520 (HB), 2003 WL 21018853, at *8-9 (S.D.N.Y. May 5, 2003) (finding consent to search involuntary where it came after defendant's arrest, defendant was not informed of right to refuse, and there were "eight agents in his living room with him and he was handcuffed"); *United States v. Lopez*, 97 Cr. 483 (RPP), 1997 WL 790582, at *6 (S.D.N.Y. Dec. 24, 1997) (declaring written consent involuntary where individual had no knowledge of her constitutional rights and was not informed that she could refuse consent).

**B.** **All Statements Reportedly Made by Mr. Calix Following His Arrest Must Be Suppressed**

The Court should also suppress all statements reportedly made by Mr. Calix following his arrest. The Fifth Amendment guarantees that no person "shall be compelled in any criminal case to be a witness against himself." It thus bars the use of any statements

9

at trial that were made by a criminal defendant involuntarily. *See, e.g.*, *United States v. Patane*, 542 U.S. 630, 640 (2004).

In light of the inherently coercive nature of police custody, and in order to safeguard these Fifth Amendment rights, individuals questioned in custody must be told that they have a right to remain silent, that anything they say may be used against them in court, that they are entitled to the presence of an attorney during questioning, and that if they cannot afford an attorney, one will be provided. *Miranda v. Arizona*, 384 U.S. 436, 478 (1966).

The government has the burden of establishing that any statements made in response to custodial interrogation are voluntary, and that an individual knowingly and willingly waived his *Miranda* rights. *See, e.g.*, *Colorado v. Connelly*, 479 U.S. 157, 164, 168-69 (1986); *United States v. Jaswal*, 47 F.3d 539, 542 (2d Cir. 1995). To prove a knowing waiver, the government must prove that a defendant actually understood the rights he was giving up. *See, e.g.*, *United States v. Sanchez-Manzanarez*, 11 Cr. 795 (RPP), 2012 WL 315870, at *7-8 (S.D.N.Y. Feb. 2, 2012).

Any statements made by Mr. Calix from the time he was arrested until *Miranda* warnings were administered two hours later should be suppressed: Mr. Calix was clearly in custody and subject to interrogation, without being given the proper warnings. There is also a strong argument that the statements were not voluntary in light of the pressure exerted by officers on Mr. Calix.

The Court should also suppress statements purportedly made by Mr. Calix after *Miranda* warnings were administered, because it appears those statements were elicited

10

pursuant to the unlawful two-step interrogation process condemned by the Supreme Court in *Missouri v. Seibert*, 542 U.S. 600 (2004).

Where police first interrogate an individual without *Miranda* warnings, then issue the warnings and interrogate the person a second time, any statements elicited during the second interrogation may also be excluded. *See Seibert*, 542 U.S. 600. In *Seibert*, the Supreme Court prohibited the practice whereby law enforcement officers first obtain inculpatory statements from a criminal suspect and then, after the administration of *Miranda* warnings, obtain a second set of inculpatory statements. The Court held that such a strategy deliberately undermined the purpose of *Miranda* and rendered inadmissible all statements obtained from the individual. As the Court wrote, "Upon hearing warnings only in the aftermath of interrogation and just after making a confession, a suspect would hardly think he had a genuine right to remain silent, let alone persist in so believing once the police began to lead him over the same ground again." *Seibert*, 542 U.S. at 613 (plurality opinion).

The relevant question is whether the midstream *Miranda* warning was effective and whether "it would be reasonable to find that in these circumstances the warnings could function 'effectively' as *Miranda* requires . . . . [and] advise the suspect that he had a real choice about giving an admissible statement at that juncture." *Id.* at 611.

The government bears the burden of establishing admissibility. *See, e.g.*, *United States v. Moore*, 670 F.3d 222, 229 (2d Cir. 2012). To determine admissibility of the second statement, the Court should consider such factors as whether this was a technique deliberately employed by law enforcement; the completeness and detail of the questions and answers in the first round of interrogation; the overlapping content of the two statements;

11

the timing of the two interrogations; and the continuity of law enforcement personnel doing the questioning. *See Moore*, 670 F.3d at 227-28; *United States v. Capers*, 627 F.3d 470, 478-80 (2d Cir. 2010).

Considering the totality of the circumstances, the government cannot meet its burden here to prove the statements admissible. As Mr. Calix's affidavit and the facts surrounding his arrest make clear, there was complete continuity between the first and the second interrogation. Mr. Calix was questioned by the same officers about the same subject matters. He was in custody the entire time and there was no meaningful break between the first and second interrogation. The subject matter was the same. Mr. Calix was arrested pursuant to a warrant and there is no conceivable reason that experienced law enforcement officers should have delayed administering *Miranda* warning to him, except in an effort to elicit statements. Given these facts, Mr. Calix's post-*Miranda* statements should also be suppressed. *See, e.g.*, *Capers*, 627 F.3d at 481-82.

### III. The Court Should Conduct a Hearing on the Motion to Suppress

If the Court declines to grant Mr. Calix's motion to suppress at this time, defendant requests an evidentiary hearing outside the presence of the jury to resolve any relevant factual disputes in this case. *See United States v. Pena*, 961 F.2d 333, 339 (2d Cir. 1992) (requiring hearing where defendant raises a "sufficiently definite, specific, detailed, and nonconjectural" factual basis for suppression).

Defendant respectfully requests the opportunity to submit additional legal briefing following a hearing, if necessary.

12

## CONCLUSION

For the reasons detailed above, the Court should dismiss Count Nine of the Indictment against Mr. Calix and suppress evidence.

Dated: New York, New York
November 27, 2013

                Respectfully submitted,
                Federal Defenders of New York

                /s/ Sarah Baumgartel
By: _____
      **Sarah Baumgartel, Esq.**
      Assistant Federal Defender
      52 Duane Street, 10th Floor
      New York, New York 10007
      Tel.: (212) 417-8772

13