# Exhibit K

# AMY M. ATTIAS, Attorney at Law

4 North Ledge Loop   Croton-on-Hudson   New York 10520
Tel. and Fax: 914.862.4084   Email: amaesq@optonline.net

May 27, 2013

Honorable Edgardo Ramos
United States District Judge
Southern District of New York
300 Quarropas Street
White Plains, New York 10601

Re:   **United States v. Torrell Saxon**
      **S1 12 Cr. 329 (ER)**

Dear Judge Ramos:

I write regarding sentencing in the above-referenced case, scheduled for Thursday, May 30, 2013. The defendant has pleaded guilty to two counts of pill distribution, in violation of 21 U.S.C. 841(a)(1) and 21 U.S.C. 841(b)(1)(E)(2). Probation has found that Mr. Saxon is a Career Offender, and the effect of this is that his advisory guidelines, which would normally be in the 3-year range, are enhanced to an advisory range of 151 to 188 months, some 12 ½ to 15 ½ years, a number that would seem an extraordinary sentence for the crime he has actually been convicted of.

I respectfully suggest that Your Honor consider sentencing Mr. Saxon without regard to the Career Offender enhancement, based on the interests of justice, the factors outlined in 18 U.S.C. §3553(a), the defendant's background as a whole, and all the facts of this case. I further suggest that a sentence in the range of 36 months would comport with the goals of sentencing and the administration of justice.

### History of the Case

Torrell Saxon was arrested when police officers in Middletown, New York responded to a 911 call of shots fired inside an apartment, on March 25, 2012. He was initially charged in the state courts, but the case was transferred to the Southern District of New York shortly thereafter. He was charged with being a felon in possession of a weapon, in violation of 18 U.S.C. 922(g), and was facing a minimum of 15 years as a Career Offender.

In August, 2012, at the request of the defense, the parties sat down for what is commonly known as an Innocence Proffer. As testified to by one of the civilian occupants of the apartment, and as outlined in the PSR, ¶¶ 9 – 11, the civilian occupants of the apartment claimed that Saxon had entered the apartment and started firing down the hallway, and had then been stopped by the men inside. Saxon had a different version of the events, however, and this was disclosed, in full detail, to the prosecution. He said that he had been on the street the night of the incident, trying to sell some pills, when a woman

Honorable Edgardo Ramos  
United States District Judge  
Southern District of New York

May 27, 2013  
Page 2

Re:     **United States v. Torrell Saxon**  
      **S1 12 Cr. 329 (ER)**

he knew brought him to a house he had not been to before. He thought he was going there to sell his pills, but instead he was jumped when he got inside, and when he resisted the men inside the apartment pulled a gun out, which fired several times during their struggle. When he was arrested, he realized that his pills were gone, and that the second, outer pair of pants he had been wearing had been removed. After his arrest, and while visibly intoxicated, Saxon made a statement consistent with this version of the facts to a Middletown detective.

As Your Honor knows, the route of an Innocence Proffer is an unusual one. Under the terms of those discussions, and unlike the usual Proffer Agreement, the defendant coming into an Innocence Proffer proceeds with no protections. Anything he says *can* be used against him. It is risky, and bold. Mr. Saxon chose to try it, and essentially bared himself to the prosecution with absolutely no protection. This speaks to several things, but the most important element was the firm knowledge of both defendant and counsel that this path committed the defendant to a version of the facts, and his "story" could not change after that. It was the truth and nothing but the truth. And importantly, it is the same version of the facts that he gave the Middletown detective some time after his arrest, when he was very clearly still intoxicated.

To the credit of all involved, and particularly to the prosecutors who were sensitive to many nuances, and willing to follow an unusual path themselves, the parties eventually were able to come to an agreement on a negotiated plea whereby Saxon would admit to two counts of possession with the intent to distribute various pills as referenced above. The issue of whether he had possessed the gun was left to be determined at a *Fatico* hearing, which was held before Your Honor on April 17 and April 23, 2013. Saxon testified at the hearing. As of the time of the writing of this letter, there has not been a decision on the hearing.

### The Guidelines and 4B1.1

As described in the PSR, because of Saxon's record, which includes a drug conviction and two robbery convictions, he falls into the Career Offender category, and his computations are subject to those enhancements. Without the Career Offender enhancement, defendant's base offense level is a 16 (without the 2 points for the gun) or an 18 (with the 2 points), before the reduction for acceptance of responsibility. With 12 criminal history points, he falls into Criminal History Category V, and his advisory guideline range would be either 30 to 37 or 37 to 46 months (depending on the Court's decision after the *Fatico* hearing).

However, because he is considered a Career Offender, § 4B1.1 of the guidelines brings his offense level to a 32, and his criminal history to VI, generating advisory guidelines of 151 to 188 months after the acceptance points are deducted. The contrast between the two sentencing ranges is striking, and it is the duty of this Court to determine, in all of this, what sentence would be sufficient but not greater than necessary, pursuant to the parsimony clause of 18 U.S.C. §3553(a).

Honorable Edgardo Ramos  
United States District Judge  
Southern District of New York

May 27, 2013  
Page 3

Re:   **United States v. Torrell Saxon**  
       S1 12 Cr. 329 (ER)

The idea of sentencing an individual, even one with a significant record, to somewhere between 12 and 16 years for selling pills, feels Draconian. In looking at the convictions that give rise to the career offender analysis, what is clear is that although these crimes technically fit the requirements of the section, they do not paint the picture of a man who is as dangerous and consistent a criminal as the section seems to contemplate by its huge boost in the base offense levels.

Saxon's drug conviction, which he sustained at the age of 18, in 1996, was a small, street level, undercover sale. His two robbery convictions, which ran concurrently, resulted from incidents that occurred approximately 14 years ago, with his sentencing taking place in 1999. Without downplaying the seriousness of his actions in any way, I suggest to Your Honor that Saxon's record does not demand such harsh treatment as the enhanced guidelines call for.

In a case that sensitively addresses the career offender statute, *United States v. Hodges*, 2009 WL 366231 (E.D.N.Y. February 12, 2009), Judge Sifton found that the career offender classification was "misplaced" in the context of an individual with a history of substance abuse, a strong commitment to family, and a checkered career as a hard worker and occasional (non-violent) participant in drug dealing. The sentencing rejected an analysis based on number-crunching, and reflected instead a careful analysis of the defendant's unique history and characteristics.

As Judge Sifton found, "[c]learly, the Sentencing Commission intended that the sentencing court exercise discretion in determining the appropriateness of categorizing a defendant as a career offender, an intention echoed by the Second Circuit, and expected that the sentencing court would reduce a defendant's range of punishment if the career offender designation were misplaced. In this case, defendant's label as a career offender is, in fact, misplaced."

A similar analysis in this case reveals that Saxon's first three convictions all took place at a time when he was actively involved in a gang (as indicated in the PSR, he was a member of the Bloods from 1996 to 2000), and when he was much younger than the 35-year-old man that this Court must sentence. Although there was some violence in his younger life (as witnessed by the robbery convictions), that was around the same time of the gang involvement, and some *fourteen* years ago. The man that Torrell Saxon has been over these last several years is one who has been trying to work at legitimate jobs (PSR ¶¶ 62 – 64), has been living with family, and has done what he can to be responsible to his family. He has been in a stable relationship for the last few years, and has a new child that is only a few months old. Both his family and the family of his child's mother are supportive of him. His mother has stabilized financially. He has gathered some practical skills, obtained his GED, worked some honest jobs, and is in a relationship with a woman who regularly attends church and encourages the same in him. The attached family letters are indicative of the closeness of the larger unit; this is a family that has struggled but sticks together, and they stand behind Torrell.

Honorable Edgardo Ramos  
United States District Judge  
Southern District of New York

May 27, 2013  
Page 4

Re: <u>United States v. Torrell Saxon</u>  
S1 12 Cr. 329 (ER)

Saxon's own immediate upbringing took place in a home where his crack-addicted father was in and out of the home, and abusive when he was around. His mother struggled to keep food on the table, and was often absent because she was working, and the family still did not have what was necessary much of the time. When he had his first child at age 17, he started selling drugs to help meet the financial needs of his household and of his new family.

Even in this case, it is clear that drug dealing was not a full-time occupation. The pill sales supplemented whatever small salaries Torrell was able to make in whatever temporary jobs he could find; more striking is the fact that he kept looking for work, and kept taking whatever legitimate jobs he was able to get. The cold truth is, that in terms of someone who was going to sell drugs in a city environment in order to make a little extra cash, pills were the least serious way to go.

As in *Hodges, supra,* Saxon has also struggled with drug addiction. Not only was it a theme in the home he grew up in, but he himself became addicted to painkillers he was prescribed after a car accident. His criminal conduct was very much intertwined with his own drug issues, and with his inability to make sufficient income legitimately. Recently, Saxon gave me a manuscript to read that he has been working on for several years. The care, the effort, and the love that has been spent on this project was apparent and deeply touching. One wonders who this man might have been in some other world, in some other time and in some other neighborhood.

### Conclusion

It is important to remember here that Torrell Saxon is being sentenced for what is essentially, in the larger scheme, a fairly low level, part-time, series of pill sales. His background, although fitting the requirements of the Career Offender scheme, does not indicate a constant, hardened criminal. What we really see, upon a dispassionate analysis of his life in the last years, is a man without much education, who grew up with a drug-addicted father and a hard-working, struggling, largely absent mother.

The road his early life took was almost predictable from his circumstances. In the last years, however, he has come close to a legitimate, working life. He is in a stable relationship with a good woman, and has maintained his family relationships, as evidenced by the letters of support attached as exhibits to this letter. He is looking ahead to supporting his two children, to being an active, involved father to his newborn child, and to trying to get his manuscript published.

Honorable Edgardo Ramos  
United States District Judge  
Southern District of New York

May 27, 2013  
Page 5

Re: <u>United States v. Torrell Saxon</u>  
S1 12 Cr. 329 (ER)

    I urge Your Honor to not look only at the numbers, but at the whole man. A sentence in the range of 36 months, which is the approximate range he would find himself in without the enhancements of the Career Offender statute, is sufficient but not greater than necessary based on all the unique facts in this case.

                                                          Sincerely,

                                                          Amy M. Attias

Enc.

Cc:    Michael Gerber, Esq.  
         Douglas Bloom, Esq.  
         Assistant United States Attorneys