**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

TORRELL SAXON,

                PETITIONER,

vs.                                   13 Civ. 4966 (ER)
                                      14 Civ. 733 (ER)

UNITED STATES OF AMERICA,

                RESPONDENT.


**PETITIONER'S REPLY BRIEF IN FURTHER SUPPORT OF MOTION TO VACATE, SET ASIDE OR CORRECT SENTENCE PURSUANT TO 28 U.S.C. § 2255**

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ..................................................................................................... ii

PRELIMINARY STATEMENT ................................................................................................1

ARGUMENT ...............................................................................................................................2

I.    MR. SAXON'S TRIAL COUNSEL WAS CONSTITUTIONALLY INEFFECTIVE. ..................................................................................................................2

    A.    The Government Misstates the Standard for Demonstrating Ineffective Assistance of Counsel. ....................................................................................................2

    B.    Mr. Saxon Is Not Eligible for Enhanced Sentencing Under ACCA. ........................5

II.    MR. SAXON DEMONSTRATED THAT HE WAS PREJUDICED BY COUNSEL'S INEFFECTIVE ASSISTANCE. ...................................................................9

CONCLUSION ..........................................................................................................................10

# TABLE OF AUTHORITIES

**Cases**                                                                                                               Page(s)

*Alexander v. Smith*, 311 F. App'x 875 (6th Cir. 2009) ............................................................... 5

*Alleyne v. United States*, 133 S. Ct. 2151 (2013) ....................................................................... 6

*Apprendi v. New Jersey*, 530 U.S. 466 (2000) ........................................................................... 6

*Bell v. Miller*, 500 F.3d 149 (2d Cir. 2007) ................................................................................. 2

*Cornell v. Kirkpatrick*, 665 F.3d 369 (2d Cir. 2011) .................................................................. 3

*Descamps v. United States*, 133 S. Ct. 2276 (2013) ................................................................... 7

*Garcia v. Portuondo*, 459 F. Supp. 2d 267 (S.D.N.Y. 2006) ..................................................... 3

*Gonzales v. Collins*, 14 F.3d 55 (5th Cir. 1994) ......................................................................... 5

*Hill v. Lockhart*, 474 U.S. 52 (1985) ........................................................................................... 9

*Padilla v. Kentucky*, 559 U.S. 356 (2010) .................................................................................. 4

*Pierce v. United States*, 686 F.3d 529 (8th Cir. 2012) ................................................................ 5

*Spaziano v. Singletary*, 36 F.3d 1028 (11th Cir. 1994) .............................................................. 5

*Theus v. United States*, 611 F.3d 441 (8th Cir. 2010) .............................................................. 10

*United States v. Calix*, 2014 WL 2084098 (S.D.N.Y. May 13, 2014) .................................. 3, 6

*United States v. Jackson*, 2013 WL 4744828 (S.D.N.Y. Sept. 4, 2013) ............................ 3, 6, 7

*United States. v. Kwong*, 14 F.3d 189 (2d Cir. 1994) .............................................................. 10

*United States v. Mooney*, 497 F.3d 397 (4th Cir. 2007) ............................................................ 3

*Wilson v. Mazzuca*, 570 F.3d 490 (2d Cir. 2009) ...................................................................... 3

**Statutes & Rules**

18 U.S.C. § 924(e)(2)(A)(ii) ......................................................................................................... 5

N.Y. Penal Law § 70.70(2)(a)(i) ................................................................................................... 1

U.S. Sentencing Guidelines Manual ........................................................................................... 10

Torrell Saxon respectfully submits this Reply Brief in further support of his motion to vacate his conviction.

## PRELIMINARY STATEMENT

The Government does not dispute that the most significant issue facing Mr. Saxon at the time of his plea negotiations was his eligibility for a 15-year mandatory minimum under the Armed Career Criminal Act ("ACCA"). And, the Government concedes that Mr. Saxon's trial counsel performed no research, or took any steps whatsoever, to determine whether Mr. Saxon was eligible for enhanced sentencing under ACCA. (Opp. 19.) In fact, had counsel taken the simple step of looking at the New York statute governing Mr. Saxon's prior drug felony, she would have seen that the current statutory maximum for that offense is nine years. N.Y. Penal Law § 70.70(2)(a)(i). Because only drug offenses with statutory maximum sentences of 10 years or more qualify as ACCA predicates, this would have alerted her to a possible defect in Mr. Saxon's Indictment. And had she done the most basic research, she would have seen the blueprint for a legal argument that would have formed the basis to dismiss the ACCA charge— just as her colleagues at the Federal Defenders successfully did before other courts in this District. (Br. 12.)

The Government's principal argument is that the courts that have accepted this argument were wrong (mostly as a result of inadequate prior briefing by the Government), that such an argument would have been rejected by this Court and, therefore, that Mr. Saxon's counsel cannot be faulted for failing to bring a "meritless" claim. (Opp. 17, 19.) This argument fails, both because the claim that Mr. Saxon was not ACCA-eligible is meritorious and because an ineffective assistance claim does not require proof that competent representation necessarily would have resulted in success. The Government has simply argued the wrong standard.

Failing to rebut Mr. Saxon's claim that his trial counsel was ineffective, the Government resorts to speculation about what would have occurred if Mr. Saxon had prevailed on his ACCA argument. Without any evidentiary support, and asking this Court to accept its unsworn statements while at the same time claiming no hearing is necessary, the Government predicts that it would have indicted Mr. Saxon for two unrelated drug crimes and sought a Guidelines enhancement based on new allegations of attempted murder. (Opp. 21-25.) This speculation does nothing to rebut Mr. Saxon's allegation of prejudice, which only requires him to show that if his counsel had considered the possibility of moving to dismiss the ACCA enhancement, there was a reasonable probability that he would have done so instead of pleading guilty. In fact, because making the motion had no downside, it is certain he would have done so. (Br. 15-19.)

## ARGUMENT

I. MR. SAXON'S TRIAL COUNSEL WAS CONSTITUTIONALLY INEFFECTIVE.

A. **The Government Misstates the Standard for Demonstrating Ineffective Assistance of Counsel.**

The Government argues that failure to move to dismiss the ACCA enhancement was not ineffective because such a motion "would have been rejected by this Court." (Opp. 19.) The Government, however, misstates Mr. Saxon's burden: to prevail, Mr. Saxon need not show that the ACCA motion was a certain winner or that this Court would have granted it. Rather, Mr. Saxon must demonstrate that counsel's performance was outside the "wide range of reasonable professional assistance." *Bell v. Miller*, 500 F.3d 149, 156 (2d Cir. 2007). Reasonably competent attorneys do not fail to perform minimal research on the key issue facing their client, as the Government does not dispute trial counsel failed to do here. Accordingly, trial counsel's performance fell below the minimum professional standard of competence. *See*

*Garcia v. Portuondo*, 459 F. Supp. 2d 267, 286 (S.D.N.Y. 2006) (failure to conduct minimal research that "would have revealed" an argument was ineffective assistance); *see also Cornell v. Kirkpatrick*, 665 F.3d 369, 383 (2d Cir. 2011) (ineffective assistance where counsel omitted a "likely meritorious challenge"); *Wilson v. Mazzuca*, 570 F.3d 490, 502 (2d Cir. 2009) (ineffective assistance where counsel's errors "arose from oversight, carelessness, ineptitude, or laziness"); *United States v. Mooney*, 497 F.3d 397, 404 (4th Cir. 2007) (ineffective assistance where counsel failed to investigate issue that "went to the heart of [defendant's] criminal liability").

The Government cites two cases for the proposition that a lawyer cannot be expected to make a "meritless claim" (Opp. 19), but the omitted arguments in those cases were so weak that they had no chance of success—in stark contrast to the motion trial counsel here failed to make, which is currently 2-0 in this District. In *United States v. Regalado*, for example, the "meritless argument" that counsel had not made was one that had been "repeatedly rejected" in binding appellate precedent, and thus competent counsel would not have been expected to raise it. 518 F.3d 143, 149 n.3 (2d Cir. 2008).[1] And in *United States v. Kirsh*, the Government

---

[1] The ACCA claim had not been rejected in binding precedent at the time of Mr. Saxon's guilty plea. Although the Government argues that "Saxon's argument is foreclosed by the Second Circuit's holding in *Rivera v. United States*" (Opp. 16), that decision cannot excuse trial counsel's omission because it had not yet been decided when trial counsel erroneously advised Mr. Saxon to plead guilty and then subsequently advised Mr. Saxon not to withdraw his prior plea because of his ACCA exposure (on April 4, 2013). 716 F.3d 685 (2d Cir. May 24, 2013). In any event, *Rivera* does not govern Mr. Saxon's ACCA eligibility because that decision was based on the fact that the Drug Law Reform Acts ("DLRAs") do not provide retroactive resentencing to offenders convicted solely of Class C felonies; as a result, those offenses did not fall into the exception in *McNeill*'s holding. *Id*. at 690. While the Government notes that the DLRAs do allow resentencing of Class C offenders when they are also resentenced for Class B offenses, resentencing is only allowed because the DLRAs are retroactive for Class B felonies even though Class C offenses on their own do not trigger resentencing. *United States v. Calix*, No. 13 Cr. 582 (RPP), 2014 WL 2084098, at *13 (S.D.N.Y. May 13, 2014); *United States v. Jackson*, No. 13 Cr. 142 (PAC), 2013 WL 4744828, at *4 (S.D.N.Y. Sept. 4, 2013).

successfully argued that a "plainly frivolous" argument could not provide the basis for an ineffective assistance claim. (Gruenstein Reply Dec. Ex. A at 74.) The frivolous argument was an assertion that defendant's non-custodial statements to an FBI agent were involuntary when there was no evidence of that, and immediately after making the statements the defendant exclaimed, "Oops, I shouldn't have said that. I shouldn't have told you that." (Gruenstein Reply Dec. Ex. A at 34-35.) Here, by contrast, trial counsel failed to raise a claim that succeeded in other courts—and from which the Government chose not to appeal. (Br. 12 & n.8.) The Government cannot now argue that such a claim was so frivolous that counsel should not have raised it.[2]

In the alternative, the Government argues that even if the ACCA claim is meritorious, it "was a novel argument" and trial counsel was therefore not ineffective for failing to assert it. (Opp. 20.) However, the argument was not novel. It was expressly anticipated both by the Supreme Court decision and the Solicitor General's brief in *McNeill*, and trial counsel's colleagues in the Federal Defenders were making the same argument at the same time. (Br. 12.) *See Padilla v. Kentucky*, 559 U.S. 356, 366 (2010) ("The first prong—constitutional deficiency—is necessarily linked to the practice and expectations of the legal community."). The arguments deemed "novel" in the cases cited by the Government (Opp. 20 n.11) are in a

---

[2] Notably, the Government does not argue that Mr. Saxon's counsel made a strategic decision not to press the ACCA motion but instead to focus her attention on seeking a reduced sentence. The Government does assert, however, that counsel followed a "strategy regularly employed by defense attorneys," namely to argue that the Court should disregard the career offender guidelines while sentencing Mr. Saxon on the drug offenses in his plea agreement. (Opp. 19 n.9.) Given Mr. Saxon's criminal history, which the Government recites at length in its opposition (Opp. 9-13), and the fact that Mr. Saxon was not a cooperating witness, the Government cannot possibly argue that this "strategy" had a reasonable likelihood of success. Moreover, the Government concedes that one of the statements made by trial counsel to Mr. Saxon to persuade him to plead guilty and follow this approach—that the AUSA thought he should receive "4 or 5 years"—was a flat-out lie. (Opp. 20, n.9 ("The AUSA made no such statement.").)

4

different ballpark.[3]

### B. Mr. Saxon Is Not Eligible for Enhanced Sentencing Under ACCA.

Even if the Government were correct that Mr. Saxon's claim rises or falls on how this Court would rule if the ACCA motion were brought today, its argument that the motion would fail is incorrect. ACCA counts as a predicate conviction a "serious drug offense," which is one "for which a maximum term of imprisonment of ten years or more is prescribed by law." 18 U.S.C. § 924(e)(2)(A)(ii). Although the Supreme Court in *United States v. McNeill* held that state law in place at the time of the prior conviction supplies the "maximum term of imprisonment . . . prescribed by law," it specifically excluded from its holding circumstances in which a state "subsequently lowers the maximum penalty applicable to an offense and makes that reduction available to defendants previously convicted for that offense." 131 S. Ct. 2216, 2224 n.1 (2011). That is precisely what New York has done in the DLRAs. (Br. 9-11.)

The Government argues that Mr. Saxon remains ACCA eligible because he did not qualify for or receive resentencing under the DLRAs. (Opp. 10-11.) The Government's position is not supported by *McNeill*, which noted an exception when a state "makes that reduction available to defendants" convicted of the offense, not only when a state actually grants

---

[3] The four cases the Government cites—none of which are from the Second Circuit and two of which were decided over 20 years ago—demonstrate that courts excuse counsel for failing to raise novel but meritorious claims in only the most extraordinary cases. *See Pierce v. United States*, 686 F.3d 529, 534 (8th Cir. 2012) (omission of "relatively sophisticated" and "counterintuitive" Guidelines argument about the grouping of prior offenses, which had been "overlooked by several extremely competent folks," including the probation office and the district court); *Alexander v. Smith*, 311 F. App'x 875, 887 (6th Cir. 2009) (unpublished) (failure to make claim based on a Ninth Circuit case that was decided six years after the defendant's trial, and which stated a rule that would have only "highly questionable" application to the facts of defendant's case); *Spaziano v. Singletary*, 36 F.3d 1028, 1039 (11th Cir. 1994) (failure to object to hypnotically refreshed testimony ten years before the Florida Supreme Court ruled it was *per se* inadmissible); *Gonzales v. Collins*, 14 F.3d 55 (5th Cir. 1994) (unpublished) (failure to anticipate argument based on general proposition of law that had never been applied to a case like defendant's).

5

a reduction to a particular defendant. *See Jackson*, 2013 WL 4744828, at *4 ("[T]o fit within the question left open by *McNeill*, the subsequent change in law must only be 'available to defendants previously convicted and sentenced'. . . [T]he 2009 DLRA allows for the retroactive modification of sentences for Class B felonies, *even if it does not do so for Jackson in particular*") (emphasis added); *see also Calix*, 2014 WL 2084098, at *14. Nor does the Government's alternative position that the *McNeill* footnote "could be read to encompass a situation in which . . . for technical or administrative reasons the reduction was unavailable to defendant" find any support in that opinion. (Opp. 14.) In any event, "technical or administrative reasons" are precisely what prevented Mr. Saxon from petitioning for resentencing, because he received a sentence of under three years for his Class B felony and because he was no longer in prison when the DLRAs were enacted. (Opp. 9.)

The Government also argues that, as a result of his post-conviction "history of recidivism and violence" (Opp. 15), the "odds that a New York court would reduce his statutory maximum are close to zero" (*id.* at 11). That is no more than rhetoric, as the Government cannot possibly be asking this Court to determine whether Mr. Saxon would have been resentenced if he filed a hypothetical petition today. To do so would be to ignore the constraints of the Sixth Amendment on judicial fact-finding and to misunderstand the fundamental purpose and structure of ACCA. Under the Sixth Amendment, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000); *see also Alleyne v. United States*, 133 S. Ct. 2151, 2163-64 (2013) (applying *Apprendi* to facts that increase the statutory minimum sentence).

Accordingly, in the ACCA context, this means that the only permissible judicial

fact-finding is "merely identifying a prior conviction" that is a predicate under ACCA. *Descamps v. United States*, 133 S. Ct. 2276, 2288 (2013). As the Supreme Court has recognized, "no one [in Congress] suggested that a particular crime might sometimes count towards enhancement and sometimes not, depending on the facts of the case. Congress instead meant ACCA to function as an on-off switch, directing that a prior crime would qualify as a predicate offense in all cases or in none." *Id*. at 2287. In other words, it is the state's view of the seriousness of the offense that matters for ACCA purposes, not the characteristics of an individual defendant. It would be both unworkable and unconstitutional to allow Class B drug felons' ACCA eligibility to depend on federal judges' guesswork about whether New York State courts would grant individual offenders a sentence reduction under the DLRAs. The Government's recitation of Mr. Saxon's criminal history, conduct in prison and uncharged offenses (Opp. 9-13) is therefore beside the point.

The Government's position also would lead to absurd, unfair results. For example, the Government acknowledges that an offender who initially received a long sentence on his Class B drug offense (and therefore was still imprisoned when the DLRAs were enacted) but who successfully petitions for a reduction has had his statutory maximum reduced for purposes of ACCA. (Opp. 10 ("the statutory maximum is not changed until after the trial court has found that a resentencing is in the interest of substantial justice").) Yet the Government contends that defendants like Mr. Saxon, who received the lowest possible sentence for the same offense, and thus could not petition for resentencing, would be charged with an ACCA predicate. (Opp. 9.) No one could say that the State regarded the latter defendant's offense as more serious than the former's, and the Government offers no explanation for this disparate treatment of defendants convicted of the same offense. *See Jackson*, at *5 ("The Government does not offer

7

any plausible explanation for why New York's legislature intended to apply the 2009 DLRA's sentencing modifications retroactively to those who are still incarcerated, but to deprive those who have already been released from prison of its ameliorative effect.").[4]

At the same time, giving effect to the retroactive reduction of Class B felony sentences does not cause any of the problems that the *McNeill* Court predicted would flow from taking into account *non*-retroactive changes in state law. For example, the Court was concerned that applying state law in effect at the time of the ACCA sentencing, rather than the time of the prior conviction, would be impossible if in the interim the state had changed the definition of the prior offense or eliminated it altogether. 131 S.Ct. at 2223. That problem would not result from a state's retroactive reduction of the sentence applicable to the exact offense for which the defendant was convicted. The Court also was concerned that two defendants convicted of the same prior state offense on the same date might receive different federal sentences if a state had reduced the maximum sentence applicable to the offense after one defendant's federal sentencing but before the other's. *Id*. at 2223-24. But applying the retroactive reduction to all defendants convicted of a state offense does not pose that concern.

Finally, the Government acknowledges that two courts in this District have held that Mr. Saxon's prior offense is not an ACCA predicate, but argues that these decisions are unpersuasive. (Opp. 18.) The Government seeks to reason these decisions away by claiming they were not "properly briefed by the parties" (of which the Government was one) and because

---

[4] The Government relies on the fact that some offenders will have their petitions for resentencing denied on "substantial justice" grounds, such as in *Davis* and *Brown*. (Opp. 10.) The "substantial justice" requirement does not relate to the State's view of the seriousness of the offense, but includes other considerations unrelated to the offense, such as conduct in prison. This does not mean that the State has not "ma[de] reductions available" to defendants convicted of Class B felonies. *McNeill*, 131 S. Ct. at 2224 n.1. On the contrary, State law provides a statutory presumption that such offenders are entitled to resentencing. (Opp. 8.)

8

the courts deciding them misunderstood the DLRAs, including the fact that not every Class B offender actually is eligible to receive a reduction in sentencing. (Opp. 18.)[5] The Government is wrong. It did in fact previously argue that the *McNeill* holding applied because not all Class B offenders qualify for a reduction, and the courts well understood that certain Class B offenders—including the defendants in those two cases—did not qualify for resentencing. (Gruenstein Reply Dec. Ex. B at 8.) While it does not appear that the Government went into as much detail as it does here about the bases on which resentencing can be denied, such grounds are irrelevant because they include factors (such as post-offense conduct) other than the State's view of the seriousness of Class B offenses, the touchstone for determining whether an offense is an ACCA predicate. This Court should follow the decisions of the two district courts that have held that New York Class B drug felonies are not ACCA predicates.

## II. MR. SAXON DEMONSTRATED THAT HE WAS PREJUDICED BY COUNSEL'S INEFFECTIVE ASSISTANCE.

The Government also asserts that even if trial counsel had been ineffective, Mr. Saxon was not prejudiced because, had he made and prevailed on an ACCA motion, the Government would have sought a superceding indictment on two other drug crimes. (Opp. 21-25.) The Government once again misstates Mr. Saxon's burden. He need not prove that he necessarily would have faced fewer charges or less sentencing exposure, but rather must show only a "reasonable probability" that but for the ineffective assistance, he would have made the ACCA motion instead of pleading guilty. *See Hill v. Lockhart*, 474 U.S. 52, 59 (1985); *see also* Br. 15-16. The Government's unsworn speculation concerning what it would have done had

---

[5] The Government offers no evidence in support of its speculation that, had Mr. Saxon brought an ACCA motion, the opposition would have been more "properly briefed" by the Government than in these prior two cases. (Opp. 18.) Of course, there is no reason to believe that the Government would have briefed the case so well as to win a motion before one court that it subsequently lost before two others. (Br. 12 & n.8.)

9

Mr. Saxon prevailed on that motion is therefore simply irrelevant as a matter of law.[6] *See Theus v. United States*, 611 F.3d 441, 449 (8th Cir. 2010) (rejecting Government's argument that "it could have charged [defendant] with a crack cocaine conspiracy and obtained a much higher sentence. Had [the Government] intended to prove a crack cocaine conspiracy against [defendant], the Government should have sought to indict him on that charge"). Mr. Saxon has met his burden: his opening brief presents unrebutted evidence showing that trial counsel's defective advice concerning his ACCA exposure drove his decision to negotiate a plea to the drug charges, and consequently that had counsel informed him of the possible ACCA motion, he would have made that motion instead of agreeing to plead guilty. (Br. 15-19.) In fact, the Government does not identify any strategic or other reason why Mr. Saxon would decide not to bring the motion but instead plead guilty.

## CONCLUSION

For the foregoing reasons and for the reasons set forth in Mr. Saxon's opening brief, Mr. Saxon's conviction should be vacated.

---

[6] It is also factually unsupported. The Government claims that, had Mr. Saxon prevailed on his ACCA motion, it would have superseded the indictment to include a heroin charge. (Opp. 22.) However, by the time of Mr. Saxon's plea, the State had already dropped that charge and there is no evidence that the Government considered bringing the charge federally. The Government also argues that had Mr. Saxon not accepted the Government's plea agreement, he would have been subject to a Guidelines range of 210-262 months on the drug case because the Government would have been able to invoke the U.S.S.G. § 2K21.1 cross-reference and establish that Mr. Saxon's offense constituted attempted murder under § 2X1.1. (Opp. 22-23.) That too is unsupported by the record. In order to establish attempted murder, the Government would have to show a "specific intent to kill." *United States v. Kwong*, 14 F.3d 189, 194 (2d Cir. 1994). Just as the Government appears to concede that this Court would have applied the lower offense level applicable to second-degree murder because of the "uncertainty as to why Saxon was [in the apartment] and . . . that he was intoxicated" (Opp. 23 & n.11), so too the Government would not be able to establish specific intent to kill on this record.

10

November 20, 2015

                    CRAVATH, SWAINE & MOORE LLP,

            By
                           _____s/ Benjamin Gruenstein_____
                               Benjamin Gruenstein

            Attorney for Petitioner (CJA-Appointed)
              Worldwide Plaza
                825 Eighth Avenue
                New York, NY 10019
                   (212) 474-1000
                         bgruenstein@cravath.com